IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PATRICK O'BRIEN MURPHY a/k/a    §
O'BRIEN MURPHY AND BEVERLY      §
MURPHY,                         §
                                §
        Pro se Plaintiffs,      §
                                §
VS.                             §    CIVIL ACTION NO. H-12-3278
                                §
HSBC BANK USA AS TRUSTEE FOR THE§
WELLS FARGO ASSET SECURITIES    §
CORPORATION HOME EQUITY ASSET-  §
BACKED CERTIFICATES, SERIES     §
2006-1,                         §
                                §
                Defendant.      §

<u>OPINION AND ORDER</u>

Pending before the Court in the above referenced cause, in part challenging Defendant HSBC Bank USA ("HSBC's") right to foreclose on Plaintiffs Patrick O'Brien Murphy and Beverly Murphy's ("the Murphys'") home on statute of limitations grounds, are (1) Plaintiffs' motion for rehearing and reconsideration (instrument #20) of the portion of the Court's Opinion and Order, signed on September 12, 2013 (#19), which dismissed Plaintiffs' claim that the statute of limitations barred HSB's enforcement of the Note and related Security Instrument securing the real property of their home; (2) Magistrate Judge Frances Stacy's memorandum and recommendation (#28) that Plaintiffs' motion should be denied; and (3) Plaintiffs' objections (#29, 30) to the Memorandum and Order.

After careful review of the record and the applicable law, for the reasons stated below the Court finds the motion for

reconsideration should be granted, the Court's previous Opinion and Order should be vacated, and Plaintiffs' motion for summary judgment on limitations grounds should also be granted.

Defendant did not file an answer to the Murphys' Original Petition, but instead filed a motion to dismiss under Rules 12(b)(1) and (6) (#3) as its responsive pleading.  In a response and counter motion for judgment under Rule 56 based on limitations under Texas Civ. Prac. and Rem. Code § 16.035 (#7), Plaintiffs requested that the Court consider the limitations bar as a matter for summary judgment under Rule 56.  Because the Court finds that the motion to reconsider should be granted and its earlier Opinion and Order of dismissal vacated, the Court also addresses the motion for summary judgment (#7), as it is intertwined with the substance and merits of HSBC's motion to dismiss.

### Standard of Review

Although the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration,[1] courts address such motions under Rules 54(b) for interlocutory orders, and 59[2] and 60[3] for final judgments.  *Dos Santos v. Bell Helicopter Textron, Inc.*

---

[1] *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997).

[2]  If filed within twenty-eight days of entry of judgment, it falls under Fed. R. Civ. P. 59(e) as a motion to alter or amend judgment.

[3] If not filed within 28 days, it is a motion for relief from judgment under Rule 60(b).

*Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009), *citing Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991);  *U.S. Bank Nat'l Assoc. v. Verizon Communications, Inc.*, Civ. A. No. 3:10-CV-1842-G, 2012 WL 3034707, at *1 (N.D. Tex. July 25, 2012).   The standard for granting a motion to reconsider is strict:  a party may file such a motion "to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).  Motions to reconsider are usually "not the proper vehicle for rehashing evidence or legal theories, or raising arguments that could have been presented earlier." *Dos Santos*, 651 F. Supp. 2d at 553;  *Id.* at 478-79.

Because the Court's Opinion and Order was interlocutory and has not been certified for appeal on the grounds that "there is no just reason for delay," this motion falls under Rule 54(b)("[A]ny order or other decision, however designated, that adjudicates fewer than all claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the parties' rights and liabilities.").  "Thus Rule 54(b) expressly allows for revision of an interlocutory order before entry of final judgment" and can be reopened at the discretion of the district judge. *Elephant Butte Irr. Dist. of New Mexico v. U.S. Dept. of Interior*, 538 F.3d 1299, 1306 (10th Cir. 2008), *cert. denied*, 555 U.S. 1172 (2009). *See also All-Pro Reps, Inc. v. Lukenbill*, 961 F.2d 216, Nos. 90-16397, 90-16430, 1992 WL 84295, at *2 (9th Cir. Apr. 22, 1992)(noting that an interlocutory

order does not have a res judicata effect), citing *Luben Indus., Inc. v. U.S.*, 707 F.2d 1037, 1040 (9th Cir. 1983)(an unappealable decision is "not sufficiently firm to give it collateral estoppel effect.").  Thus the standards for granting reconsideration of an interlocutory order under Rule 54(b) "are somewhat looser than those under Rule 59(e)."  *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474 (M.D. La. 2002)(district courts have considerable discretion in determining whether to reconsider an interlocutory order); *Brown v. Wichita County, Tex.*, No. 05-108, 2011 WL 1562567, at *1 (N.D. Tex. Apr. 26, 2011)(While the exact standard for deciding a Rule 54(b) is unclear, "whether to grant such a motion rests within the discretion of the court" and "the district court's discretion in this respect is broad.").  With an interlocutory order, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespeare v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993), *rev'd on other grounds, Little v. Liquid Air Corp.*, 37 F.3d 1069 (1994)(*en banc*).

Nevertheless, although a district court "'possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient,'" the court must exercise its discretion by balancing "stability and reaching the right decision." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981); 18B Charles A. Wright and Arthur R.

-4-

Miller, *Federal Practice & Procedure* § 4478.1 (2d ed. 2001).  In light of the stay imposed on this case until the appeal of the Murphys' first state court suit is resolved, the Court in its discretion finds that rehearing and reconsideration at this stage, since the briefing is complete, would not result in any further additional expense or delay to the parties because the case has not progressed so as to make a return to and reconsideration of the issue costly or difficult to untangle; instead reconsideration would permit review of more developed facts than were previously before the Court and aid in insuring a correct and just result. Moreover the Court finds errors of law in the Magistrate Judge's memorandum and recommendation that should be addressed.

### Procedural History

After refinancing a loan on their property at 503 Flaghoist Lane, Houston, Texas 77079 in 2006,[4] in early 2008 the Murphys deliberately defaulted[5] on their mortgage in an attempt to force Wells Fargo to negotiate another refinancing of their home, based on Wells Fargo's alleged promise that if their credit improved and they made their payments, they could refinance after two years at a lower interest rate.  Wells Fargo, as mortgage servicer for HSBC,

---

[4] Copies of the Note and Texas Home Equity Security Instrument executed by the Murphys are attached to the Original Petition (Instrument #1-3, Ex. B.2).

[5] Original Petition at ¶ 10 (#1, Ex. B.2 at ¶10:  "Wells Fargo counterclaimed, but sought in their counterclaim only a declaratory judgment that the Murphys were in default (*hardly necessary as the Murphys admitted they stopped making payments in their petition*) and attorneys fees. [emphasis in the original]."

then accelerated the loan, sending a notice of intent to accelerate and, and on June 12, 2008, Plaintiffs received the notice of acceleration informing them that the principal and interest on the loan were immediately due and payable (#1, Exs. C and D).

On June 19, 2008 Wells Fargo assigned the Note and Deed of Trust on the loan to HSBC, which subsequently served the Murphys with an expedited, non-judicial foreclosure action.  Wells Fargo and HSBC filed an application for expedited non-judicial foreclosure in the 295th Judicial District Court of Harris County, Texas.  The Murphys then sued Wells Fargo and HSBC in the 55th Judicial Court of Harris County, Texas (the "First Lawsuit") for fraud, breach of contract, and violation of the Texas Deceptive Trade Practices-Consumer Protection Act.  As required by Texas Rule of Civil Procedure 736.10,[6] on November 24, 2008 the 295th Judicial District Court abated and dismissed Wells Fargo and HSBC's suit seeking expedited non-judicial foreclosure.  Subsequently in their state court suit, after the Murphys challenged the standing of Wells Fargo or HSBC to foreclose on their house, on March 29, 2011 the trial court granted summary judgment in favor of Wells Fargo and HSBC, dismissed the Murphys' claims, and awarded Defendants

---

[6] In effect at the time, Rule 736.10 (West 2010) provided,

A proceeding under Rule 736 is automatically abated if, before the signing of the order, notice is filed with the clerk of the court in which the application is pending that respondent has filed a petition contesting the right to foreclose in a district court in the county where the application is pending.  A proceeding that has been abated shall be dismissed.

fees and costs against the Murphys, personally.[7]  On appeal, on February 12, 2013, the 14th Court of Appeals affirmed the summary judgment, but reversed the award of fees and costs against the Murphys personally, stating that the banks could only recover fees and costs against the property.  *Murphy v. Wells Fargo Bank, N.A.*, No. 14-11-00560-CV, 2013 WL 510129 (Tex. App.--Houston [14[th] Dist.] Feb. 12, 2012), *petition for review filed* (Apr. 29, 2013).[8]  As noted in the citation, an appeal was filed.

After the trial court's ruling in the First Lawsuit, HSBC sent Plaintiffs a new notice of intent to accelerate on December 30, 2011,[9] and a notice of acceleration on June 20, 2012.[10]  On August

---

[7] Copy of final summary judgment at #10-6 Ex. F.

[8] With regard to HSBC's motion to dismiss Murphys' claims contesting HSBC's chain of title as barred by *res judicata*, in its Opinion and Order (#19) the Court denied the motion to dismiss as to them and stayed that part of the case until the appeal in state court of the First Lawsuit is final.

[9] Copy included in #10-7 Ex. G.

[10] This Court notes that HSBC sent its second notice of intent to accelerate on December 30, 2011, still within four years of the initial acceleration of the Note and the accrual of HSBC's claim on June 12, 2008, but its notice of acceleration on June 20, 2012, was outside the limitations period.  Moreover HSBC filed its second application for expedited non-judicial foreclosure on August 16, 2012.  *See Slay v. Nationstar Mortg., LLC*, No. 2-09-052-CV, 2010 WL 670095, at *3 (Tex. App.--Fort Worth Feb. 25, 2010, pet. denied)("The plain language of section 16.035(a) does not require that the actual foreclosure occur within the four-year limitation period, but rather, requires only that the party seeking foreclosure 'bring suit . . . not later than four years after the day the cause of action accrues.'").  Therefore unless the first acceleration was effectively abandoned, continued, or waived, and therefore a new, independent acceleration invoked in June 2012, HSBC's second suit, i.e., the

16, 2012, HSBC filed a new application for non-judicial foreclosure in the 270th Judicial District.[11]  In turn, on September 26, 2012, the Murphys filed the instant suit in the 151st District Court of Harris County, Texas against HSBC, claiming an invalid chain of title and unenforceable Note and Deed of Trust on limitations grounds and seeking a declaratory judgment.  The suit was transferred to the 270th Judicial District, where HSBC had filed its second Application for Court Order Allowing Foreclosure, and on November 5, 2012 Defendants removed the case to this Court on diversity jurisdiction.  HSBC then moved to dismiss on the grounds that the chain of title claim was barred by *res judicata*, or alternatively, for failure to state a claim.[12]  It also moved to dismiss the Murphys' limitations claims under Federal Rule of Civil Procedure 12(b)(6).

At issue now in Plaintiffs' objections to the Magistrate Judge's recommendation is whether, in compliance with Texas law at the time, Tex. R. Civ. P. 736.10, HSBC could (and did) unilaterally and without a written agreement abandon the 2008 acceleration of the Note by the state court judge's November 24, 2008 order of abatement and dismissal of HSBC's initial foreclosure proceeding

---

instant action, was outside the four-year limitations period and is time-barred.

[11] #10-7 Ex. G.

[12] With regard to the *res judicata* claim, based on the state court ruling in the First Lawsuit, in its previous Opinion and Order (#19) the Court stayed the part of this lawsuit raising that defense until the appeal of the first Lawsuit is final.

against the Murphys, which was signed as "approved as to form and substance" by the Murphys' attorney.

### Relevant Law

Under Texas Civil Practice & Remedies Code § 16.035(b) and (d), "a sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues," and "on the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void." Ordinarily, "[i]f a series of notes or obligations or a note or obligation payable in installments is secured by real property, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment. *Id.*, § 16.035(e). The Maturity Date on Murphys' Note and on the Security Instrument is February 1, 2036. #1-3, Exs. A and B. "When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void." Tex. Civ. Prac. & Rem. Code § 16.035(d); *Holy Cross Church of God in Christ*, 44 S.W. 3d 562, 567 (Tex. 2001).[13]

Nevertheless when the holder of a note secured by a real property lien accelerates payment according to an optional

---

[13] Under Texas Civ. Prac. & Rem. Code § 16.035(e), "If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation or installment."

-9-

acceleration clause in the note,[14] an action accrues as of the date
the note is accelerated.  *Holy Cross*, 44 S.W. at 566; *Burney v.
Citigroup Global Markets Realty Corp.*, 244 S.W. 3d 900, 903 (Tex.
App.--Dallas 2008, no pet.).  When a cause of action accrues is a
question  of  law  for  the  court,  while  whether  a  holder  has
accelerated a note is a question of fact to which the parties may
stipulate.  *Holy Cross*, 44 S.W. 3d at 567-68.  Here the documents
attached to the petition, of which the Court took judicial notice
and which the parties do not dispute, reflect that the date of
accrual (the date of acceleration) was June 12, 2008.  "The plain
language  of  section  16.035(a)  does  not  require  that  the  actual
foreclosure occur within the four-year limitation period, but
rather,  requires  only  that  the  party  seeking  foreclosure  'bring
suit . . . not later than four years after the day the cause of
action accrues.'"  *Slay v. Nationstar Mortg., L.L.C.*, No. 2-09-052-
CV, 2010 WL 670095, at *3 (Tex. App.--Fort Worth Feb. 25, 2010 pet.
denied).  Thus HSBC had four years from June 12, 2008 to file suit
before its lien and power to enforce the Note became void.  The
instant action was not filed until August 16, 2012, more than four
years after the Note was due and payable.

    As this Court noted, however, in its Opinion and Order,

------

    [14]Acceleration requires both a notice of intent to
accelerate and a notice of acceleration.  *Burney*, 244 S.W. 3d at
903, *citing Holy Cross*, 44 S.W. 3d at 566.  In *Holy Cross*, 44
S.W. 3d at 569, the Texas Supreme Court rejected the view that
beyond such notice an affirmative act toward enforcing the
acceleration, such as posting notice of the foreclosure sale, is
required to trigger acceleration of the note.

"[A]cceleration can be abandoned by agreement or other action of the parties." *Khan v. GBAK Properties, Inc.*, 371 S.W. 3d 347, 353 (Tex. App.--Houston [1ˢᵗ Dist.] 2012), *citing Holy Cross*, 44 S.W. 3d at 567.  The Fourteenth Court of Appeals observed, "It has been the law of Texas at least since 1901 that the parties can abandon acceleration and restore the contract to its original terms by the parties' agreement or actions." *Khan*, 371 S.W. 3d at 356, *citing San Antonio Real Estate, Bldg. & Loan Ass'n v. Stewart* , 94 Tex. 441, 61 S.W. 386, 388 (Tex. 1901).  Such an agreement does not need to be made in writing. *Santibez*, 2012 WL 3639814 at *3 ("parties can abandon acceleration by their actions alone"); *Khan*, 371 S.W. 3d at 356 (Abandonment requires joint action of the parties; "[I]f an agreement abandoning acceleration had to be in writing, then the parties would not be able to do it by their actions alone, as [*San Antonio Real-Estate Building & Loan Assoc. v. Stewart*, 94 Tex. 441, 61 S.W. 386, 388-89 (Tex. 1901)] holds."

In addition, "[e]ven when a note holder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Holy Cross*, 44 S.W. 3d at 566-67.

Moreover, the note holder cannot unilaterally abandon its acceleration by dismissing its claims where the other party objects. *San Antonio Real-Estate Building & Loan Assoc. v. Stewart*, 61 S.W. at 388-89 (Tex. 1901) ("It is not in the power of the creditor by his acts alone to change the rights of the parties

resulting from the maturity of the debt," and "neither party by his separate action or nonaction [may] impair the rights of the other."). In *Denbina v. City Of Hurst*, 516 S.W. 2d 460, 463 (Tex. Civ. App.--Tyler 1974, no writ), the court opined that "the action of the obligee in exercising his option to accelerate payment and declare all of the notes of a series due, absent some object of the maker, does not render irrevocable his right to waive the exercise of the option." It held that where a debtor makes no objection, a creditor can abandon or rescind its acceleration by voluntarily dismissing its claims against the debtor. *Id.*

A note holder may suspend the four-year limitations period after it has started to run and extend the maturity date of the note by filing their agreement to do so in writing in the county clerk's office where the real property is located. *Id.* at § 16.036[15]; *id.* In *Santibanez v. Saxon Mortg. Inc.*, No. 11-10-00227-

---

[15] Section 16.036 states,

**Extension of Real Property Lien**

(a) The party or parties primarily liable for a debt or obligation secured by a real property lien, as the term is defined in Section 16.035, may suspend the running of the four-year limitations period for real property liens through a written extension agreement as provided by this section.

(b) The limitations period is suspended and the lien remains in effect for four years after the extended maturity date of the debt or obligation if the extension agreement is:

　　　(1) signed and acknowledge as provided by law for a deed conveying real property; and

CV, 2012 WL 3639814, at *3 (Tex. App.--Eastland Aug. 23, 2012, no pet.), the appellate court rejected the argument that an abandonment agreement must comply with § 16.036.

"Abandonment of the acceleration has the effect of restoring the contract to its original condition, including restoring the note's original maturity date." *Khan*, 371 S.W. 3d at 353, *citing Holy Cross*, 44 S.W. 3d at 567; *in accord Clawson v. GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp.*, No. 3:12-CV-00212, 2013 WL 1948128 (S.D. Tex. May 9, 2013); *Santibanez v. Saxon Mortg. Inc.*, No. 11-10-00227-CV, 2012 WL 3639814, at *2 (Tex. App.--Eastland Aug. 23, 2012, no pet.).

### Court's September 12, 2013 Opinion and Order (#19)

In its Opinion and Order, the Court found that in their Original Petition the Murphys had "stated a claim as to the validity of the lien under Section 16.035 of the Texas Civil Practice and Remedies Code" because they alleged that the Note was accelerated by HSBC on June 12, 2008, but that HSBC failed to file

---

> (2) filed of record in the county clerk's office of the county where the real property is located.
>
> (c) The parties may continue to extend the lien by entering, acknowledging, and recording additional extension agreements.
>
> (d) The maturity date stated in the original instrument or in the date of the recorded renewal and extension is conclusive evidence of the maturity date of the debt or obligation.
>
> (e) The limitations period under this section is not affected by Section 3.118, Business & Commerce Code.

suit until August 16, 2012, more than four years after the
acceleration.  This Court nevertheless further concluded, based on
the Murphys' allegations and the public documents provided by HSBC
that under the facts here "a limitations claim cannot be maintained
under Section 16.035 as a matter of law." #19 at pp. 7-8.  It
determined that HSBC's dismissal of its state court application for
expedited, non-judicial foreclosure in the 295th Judicial Court of
Harris County, Texas in favor the Murphys' state court lawsuit
against HSBC and Wells Fargo challenging HSBC's standing to
foreclose (the First Lawsuit), constituted an abandonment of the
acceleration of the Note.  *Id.* at p. 8.  Specifically it found that
under Texas Rule of Civil Procedure 736, section 10,  [16]  and an
agreement of the parties, HSBC's application was "automatically
abated and. . . dismissed" after the Murphys filed their action in
the 55th Judicial District Court of Harris County, pursuant to Rule
736.10 then in effect.  The Court found the dismissal was agreed
based on the fact that both parties signed the agreement,[17] with the

---

[16] The 2008 Foreclosure Application and Dismissal occurred
when former Texas Rule of Civil Procedure 736.10 was in effect.
The rule provided, "A proceeding under Rule 736 is automatically
abated if, before the signing of the order, notice is filed with
the clerk of the court in which the application is pending that
respondent has filed a petition contesting the right to foreclose
in a district court in the county where the application is
pending.  A proceeding that has been abated shall be dismissed."

[17] Copies of the order of the 295th Judicial District Court
dismissing HSBC's application for expedited non-judicial
foreclosure on November 24, 2008 are found at #3-2, #10-5 Ex. E,
and #20 Ex. B.  The order states that because the Murphys filed
suit in the 55th Judicial District Court of Harris County
contesting HSBC's right to foreclosure, HSBC's application for

-14-

Murphys' counsel expressly approving the order "as to form and substance," that the dismissal was unopposed by HSBC, and that HSBC did not appeal the dismissal.  By means of HSBC's conduct and the dismissal order by the 295th District Court, this Court opined that

> the June 12, 2008 acceleration was abandoned and the contract was restored to its original condition.  Having been restored to its original condition, the current cause of action accrued on June 20, 3012 when HSBC sent the second notice of acceleration to the Murphys. Therefore, due to the abandonment of the original acceleration, the Murphys' limitations claim cannot be maintained under Section 16.035 as a matter of law and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

#19. p 9.

**The Murphys' Motion for Rehearing and Reconsideration (#20)**

Plaintiffs moved for rehearing and reconsideration, arguing that the Court considered "public extraneous matters" and erroneously interpreted the governing statutes and the holdings of the Texas Supreme Court, impliedly ruling that the unilateral acts of the note holder are sufficient to constitute abandonment.  The parties did not formally reinstate the loan under Tex. Civ. Prac. & Rem. Code § 16.036.  Defendants contend that abandonment of acceleration requires an actual agreement of both the note holder and the debtor or a course of conduct by *both* parties to evidence a mutual intent to restore the note to its original terms.  *Khan*, 371 S.W. 3d 347.

--------

expedited non-judicial foreclosure had to be automatically abated under § 736.10 and dismissed.  Moreover, on the second page of the order Michael Stewart, as attorney for the Murphys, signed as "APPROVED AS TO FORM AND SUBSTANCE," while Jeffrey Hardaway, as attorney for HSBC, signed as "APPROVED AS TO FORM ONLY."

In essence the Murphys contend that the Court erred by concluding that HSBC's acceleration of the Note was abandoned by the parties because the public documents submitted by HSBC do not show an agreement of the parties to abandon the acceleration nor a mutual intent that the Note would be restored to its original terms.  They argue that the order of dismissal of the first expedited foreclosure action was not an agreed order.  The dismissal order only states that the action is dismissed.  Counsel for HSBC approved the dismissal order as to form only.[18]  Because the order does not provide for any payments to be made or accepted nor require the note holder to waive any right to proceed with remedies available to HSBC after acceleration, the Murphys contend that the order fails to satisfy the level of mutual action necessary to evidence abandonment of acceleration.  Moreover under Texas Rule of Civil Procedure 736(8)(effective until January 1, 2012), the order of dismissal is not appealable, so the Court's reliance on HSBC's failure to appeal is misplaced.  Although Rule 736 requires that the suit filed by the Murphys contesting the foreclosure must result in automatic dismissal without prejudice of HSBC's first expedited non-judicial foreclosure suit, HSBC also

---

[18] In their response (#7) to  HSBC's motion to dismiss, the Murphys argue that if HSBC "can 're-accelerate' and change the accrual date unilaterally," then "[w]hat could stop it from accelerating and then re-accelerating every 3 years and 364 days, extending limitations forever and destroying the meaning of Sections 16.035 and 16.036 of the Texas Practice and Remedies Code?  Nonsensical is a rather kind way to describe such a ludicrous argument."  #7 at p. 6.

failed to counterclaim for judicial foreclosure in the Murphys'
state court action, or even seek an order under Rule 736(8).
Instead HSBC chose only to delay instituting foreclosure past the
expiration date of the statute of limitations.  Plaintiffs insist
they took no action to obstruct HSBC from enforcing its rights as
provided in Texas Rules of Civil Procedure 735[19] and 736(9)[20] and in
the Note and Security Instrument, which included filing a
counterclaim for foreclosure.  A dismissal without prejudice has no
effect on the accrual date without formal reinstatement under

---

[19] Section 735 (effective until January 1, 2012, provided,

A party seeking to foreclose a lien created under Tex.
Const. art XVI, § 50(a)(6), for home equity loan, or
Tex. Const. art. XVI, § 50(a)(7), for a reverse
mortgage, that is to be foreclosed on grounds other
than Tex. Const. art. XVI, §§ 50(k)(6)(A) or (B), may
file:  (1) a suit seeking judicial foreclosure; (2) a
suit or counterclaim seeking a final judgment which
includes an order allowing foreclosure under the
security instrument and Texas Property Code § 51.002,
or (3) an application under Rule 736 for an order
allowing foreclosure.

[20] Section 736.9 (effective until January 1, 2012, provided,

**Nonpreclusive Effect of Order.**  No order or
determination of fact or law under Rule 736 shall be
res judicata or constitute collateral estoppel or
estoppel by judgment in any proceeding or suit.  The
granting of an application under these rules shall be
without prejudice to the right of the respondent to
seek relief at law or in equity in any court of
competent jurisdiction.  The denial of an application
under these rules shall be without prejudice to the
right of the applicant to re-file the application or
seek other relief at law or in equity in any court of
competent jurisdiction.

16.036 or joint action of the parties.

**HSBC's Response (#21)**

HSBC objects to the Murphys' argument that Texas law does not require either a formal, written agreement nor joint action to abandon an acceleration.

The Court has already indicated that the law does not require a formal written agreement by the parties to abandon acceleration. *Santibez*, 2012 WL 3639814 at *3 ("parties can abandon acceleration by their actions alone"); *Khan*, 371 S.W. 3d at 356 ("[I]f an agreement abandoning acceleration had to be in writing, then the parties would not be able to do it by their actions alone, as [*San Antonio Real-Estate Building & Loan Assoc. v. Stewart*, 94 Tex. 441, 61 S.W. 386, 388-89 (Tex. 1901)] holds.".

HSBC also contends that Texas law does not require joint action to abandon an acceleration and that a borrower can strip a lender of its rights by unilaterally acting or refusing to act. Citing *Clawson*, 2012 WL 1948128, at *4 (holding that a note holder may "abandon[] acceleration without express agreement from the borrower")(*citing Holy Cross*, 44 S.W. 3d at 566-67)), HSBC insists that there is no case requiring joint action by the parties. *Id.* at *4. If such were the rule, a debtor could prevent HSBC from abandoning acceleration by refusing to make payments on the note and could strip lenders of their rights by unilaterally acting or refusing to act. Nor is HSBC required to show that the Murphys prevented HSBC from filing for foreclosure by filing a counterclaim in their state court suit in 2008.

-18-

**Magistrate Judge's Memorandum and Recommendation (#28)**

Recommending that this Court deny Plaintiffs' motion for rehearing and reconsideration, the Magistrate Judge concurred with the Court's finding that the agreed dismissal of HSBC's state court application for expedited non-judicial foreclosure in favor of the Murphys' subsequent state court suit against HSBC and Wells Fargo, constituted an abandonment of acceleration of the Note. The Magistrate Judge concluded that there was no error in this Court's ruling. In light of the Murphys' subsequently filed suit in the 55th District Court of Harris County, Texas, contesting HSBC and Wells Fargo's right to foreclose, the 295th District Court, as required by Texas Rule of Civil Procedure 736.10, "automatically abated" and dismissed HSBC's first application for expedited non-judicial foreclosure in an order that was signed by the Murphys' counsel as approved as to form and substance and by HSBC's counsel as to form only. Thus the parties agreed to the dismissal, which accordingly abandoned the acceleration of the note.

Nor, the Magistrate Judge concluded, was it error for the Court to consider the public documents submitted in connection with the Original Petition and the Murphys' Rule 12(b)(6) motion to dismiss because the Court properly took judicial notice of matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir. 2007)("It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)("The court's review is limited to the complaint, any

-19-

documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").[21]

---

[21] The Court further notes that Federal Rule of Evidence 201(b) allows the Court to take judicial notice only of an adjudicative fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Furthermore, Rule 201(g) states, "In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed."  "A fact that has been judicially noticed is not subject to dispute by the opposing party."  *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1988)("Since the effect of taking judicial notice under 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing.").

In *Taylor Charter Medical Corp.*, 162 F.3d 827, 829-30 (5th Cir. 1998)(citations omitted), the Fifth Circuit joined the Second and Eleventh Circuit Courts of Appeals in ruling that a court may take judicial notice of a "document filed in another court . . . to establish the fact of such litigation and related filings,' but not of the factual findings of another court because those do not constitute facts "not subject to reasonable dispute within the meaning of Rule 201 and because to do so merely because a fact had been found to be true in some other action would make the doctrine of collateral estoppel superfluous.  A court may take judicial notice of an order of another court only for the limited purpose of recognizing the judicial act that the order represents.  *Id.* at 831; *Colonial Leasing Co.*, 762 F.2d at 759.  *See also Kay v. Lone Star Fund v, (U.S.), L.P.*, 453 B.R. 645, 664-65 (N.D. Tex. 2011)("When a court takes judicial notice of public documents or documents from another court, it may only take notice of the undisputed facts therein, which do not include the 'facts' asserted in various affidavits and depositions.").

It is proper to take judicial notice of the record in an earlier proceeding if the case involved the same parties now before the court.  *In re James*, 300 B.R. 890, 896 (Bkrtcy. W.D. Tex. 2003), *citing Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 (1969).

In addition, to the Murphys' argument that acceleration was
not abandoned because they made no payments on the Note after the
2008 acceleration and there was no agreement that the acceleration
was abandoned, the Magistrate Judge determined that the Murphys'
argument lacked merit because Texas law does not prevent HSBC from
unilaterally abandoning the 2008 acceleration.  She opined that no
Texas authority supports the Murphys' contention that they had to
be a party to any abandonment or that any mutual intent was needed
for the abandonment.  She construed    *Holy Cross*' holding that
abandonment can occur when a note  holder unilaterally decides to
accept payments from a debtor "without exacting any remedies" as
indicating the opposite.  Moreover she cites    *Clawson v. GMAC
Mortgage, LLC*, No. 3:12-cv-00212, 2013 WL 1948128, at *4 (S.D. Tex.
May 9, 2013), for its holding that Texas law "does not preclude a
note holder from abandoning acceleration without express agreement
from the borrower."[22]

---

[22] This Court finds that *Clawson* is easily distinguished
from the situation here and does not apply because in *Clawson* the
note holder, after providing a notice of acceleration, recorded a
notice publicly rescinding the acceleration and thereby restoring
the note and deed of trust to their original terms and
conditions.  2013 WL 1948128, at *1.  This Court observes that in
*Clawson,* after Clawson defaulted on her mortgage loan, GMAC
properly accelerated the note on October 28, 2008.  Nevertheless,
on January 16, 2009, stating that Clawson had requested an
opportunity to cure, GMAC recorded a notice rescinding the
acceleration and thus the note and deed of trust were restored to
their original terms and conditions.  Clawson then filed a
declaration stating that she had never made that request.  After
the rescission, Plaintiffs Clawson and Riddle filed suit against
GMAC and others, but it was dismissed with prejudice after the
court granted summary judgment in favor of GMAC.  On August 25,
2011 GMAC sent Clawson another notice of default and demanded
that she cure within 30 days.  On May 30, 2012 it sent a new

**Plaintiffs' Objections (#29 and 30)**

The Murphys identify as the Magistrate Judge's "most glaring factual error" her finding that the state court's order dismissing HSBC's 736 application for expedited foreclosure was an agreed order that constituted an abandonment of HSBC's acceleration of the Note and her erroneous reliance for that conclusion on the Murphys' counsel's signature approving the order as to form and substance. They argue that courts have held that the notation, "Approved as to

---

notice of acceleration stating that Clawson owed $1,004,480.58, and notice of substitute trustee's sale, named a substitute trustee, and set a foreclosure sale for July 3, 2012.  The day before that sale was to take place, Plaintiffs filed a lawsuit seeking declaratory and injunctive relief and damages on a usury claim, which was removed to federal court.  Judge Costa found that "GMAC abandoned its attempted acceleration [in 2008], and accordingly reset the statute of limitations, when it recorded the notice of rescission in January 2009."  2013 WL 1948128, at *3.  Because GMAC thereby restored the note and deed of trust to their original trust, its cause of action for the next default did not accrue until it exercised its option to accelerate in May 2012, and the foreclosure sale date of July 3, 2012 was within the four-year limitations period.  *Id.* at *4.  Noting that the Texas Supreme Court in *San Antonio Real Estate Building & Loan Assoc. v. Stewart*, 94 Tex. 441, 61 S.W. 3d 386, 388-89 (Tex. 1901) held that "It is not in the power of the creditor by his acts alone to change the rights of the parties resulting from the maturity of the debt" and that "neither party by his separate action or nonaction [may] impair the rights of the others," Judge Costa distinguished *Clawson*:  "*Stewart* was premised on the situation is which the failure to pay an installment *ipso facto* gives rise to the cause of action on the whole debt; the opinion explicitly distinguishes situations, like the present, in which the contract is regarded as giving to the creditor the right of election."  *Id.*, *citing Stewart* at 388.
     In the case before this Court, Wells Fargo and HSBC could elect whether to give notice of intent to accelerate and notice of acceleration of the debt.
     While *Clawson* does not require a written or express agreement, it does not hold that unilateral rather than joint action by a party is sufficient for abandonment outside of available statutory remedies such as Texas Rules of Civil Procedure 735, 736.

Form and Substance," is insufficient, by itself, to make a judgment a consent judgment that is not subject to appeal. *Oryx Energy Company v. Union Nat'l Bank of Texas*, 895 S.W. 2d 409, 417 (Tex. App.--San Antonio, 1995, pet. denied); *First American Title Ins. Co. v. Adams*, 829 S.W. 2d 356, 364 (Tex. App.--Corpus Christi 1992, writ denied)("Courts should not decide cases based on the inclusion or omission of 'magic words.' Instead decisions should be based upon the facts as recited in the record as a whole.").

In response to the Murphys' argument, the Court reiterates that motions to reconsider are not the proper vehicle for raising new arguments that could have been raised earlier. *Templet*, 367 F.3d at 479; *U.S. Bank Nat. Ass'n v. Verizon Communications, Inc.*, No. 3:10-CV-1842-G, 2012 WL 3034707, at *2 (N.D. Tex. July 25, 2012). The Murphys did not argue in their Original Petition that they opposed the mandatory dismissal of Defendants' first foreclosure suit or that their counsel's signature approving the final judgment as to form and substance did not mean that counsel consented to it, nor did Plaintiffs raise such arguments in their response to the motion to dismiss/purported motion for summary judgment (#7) or in their response in opposition (#15) to Defendants' response(#10) to #7. Nevertheless, because in balancing the need for certainty, finality and protection of the parties from additional delay and cost against the need for a just and correct decision, the Court finds that reconsidering the issues

under the circumstances here would not result in additional cost and delay to the parties and additional development of the facts would serve the ends of a just and correct decision.

Regarding Plaintiffs' contentions about the phrases "approval as to form and substance" and/or "approval as to form" this Court notes that there is a split among the Texas courts of appeals on this question and that some courts support the Court's earlier decision.[23] *See, e.g., In re D.C.*, 180 S.W. 3d 647, 649 (Tex. App.-Waco Oct. 12. 2005).  Among those holding that approving a judgment as to form and substance creates a consent judgment that cannot be appealed are *DeLee v. Allied Finance Co. of Dallas*, 408 S.W. 2d 245 (Tex. Civ. App.--Dallas 1966); *Cisneros v. Cisneros*, 787 S.W. 2d 550, 552 (Tex. App.--El Paso 1990, no writ)("Approval as to substance of a judgment is tantamount to an agreement by the signatory that the judgment meets all of the essential requirements.  By Appellant's approval of the substance of the judgment we hold that Appellant has waived any error in the judgment . . . ."); *Bexar County Criminal Dist. Attorney's Office*

---

[23] A signed approval of a judgment can make the judgment a consent judgment. *Holler v. State Farm Mutual Auto Ins. Co.*, 551 S.W. 2d 46, 48 (Tex. 1977).  A party may not appeal an agreed judgment unless he alleges and shows fraud or misrepresentation because the effect of a consent judgment is to waive all errors except lack of jurisdiction. *DeLee v. Allied Finance Co.*, 408 S.W. 2d 245, 247 (Tex. App.--Dallas 1966, no writ); *Dunman v. Hartwell*, 9 Tex. 495, 495 (Tex. 1853).  Approval of a judgment as to form only, which signifies that the person agrees that the written judgment accurately reflects the court's ruling, does not, however, waive the right to appeal the judgment. *Sigma Systems Corp. v. Electronic Data Systems Corp.*, 467 S.W. 2d 675, 677 (Tex. Civ. App.--Tyler 1971, no writ).

*v. Mayo*, 773 S.W. 2d 642, 644 (Tex. App.--San Antonio 1989, no writ)("Consent must be explicitly and unmistakably given.  The notation 'Approved,' standing alone, is too indefinite to justify declaring as a matter of law that a judgment is a consent judgment. We hold that when an attorney's signature indicates 'Approved,' he has simply approved the judgment as to form only, unless the language in the judgment indicates that the substance of the judgment was also agreed.  The better practice is to remove all uncertainly by stating 'Approved as to Form Only' or 'Approved and Agreed' or 'Approved as to Form and Substance.'  Because the State did not agree to the order, it was entitled to bring this appeal."); *Allied First Nat'l Bank of Mesquite v. Jones*, 766 S.W. 2d 800, 801 (Tex. App.--Dallas 1988, no writ); *Claxton v. (Upper) Lake Fork Water Control and Imp. Dist. No. 1*, 220 S.W. 3d 537, 544 (Tex. App.--Texarkana 2006); *Office of Attorney General of Texas v. Wilson*, 24 S.W. 3d 902, 906 (Tex. App.--Dallas 2000).  *See also Seeberger v. BNSF Ry. Co.*, No. 01-12-00583, 2013 WL 5434141, at *5 (Tex. App.--Houston [1st Dist.] Sept. 26, 2013)("Seeberger noted his objection on the proposed judgment by limiting approval to form only, which "does not waive any error in the proceedings or incident to the judgment itself."), *quoting Cisneros*, 787 S.W. 2d at 552.

Other courts have held that neither "approved as to form" or "approved as to form and substance," standing alone, transforms the judgment into a consent judgment. *See, e.g., Chang v, Nguyen*, 81 S.W. 3d 314, 316, 319 n. 1 (Tex. App.--Houston [14th Dist.] 2001,

no pet.).

Nevertheless, the Court's research has led it to conclude, and thus to agree with the Murphys, that the majority of courts have held that a counsel's agreement as to form and content of a judgment, standing alone, is insufficient to constitute an unappealable agreed judgment. *Andrew Shebay & Co., PLLC v. Bishop*, ____ S.W. 3d ____, 2013 WL 1844213, at *1 (Tex. App.--Houston [1 st Dist. May 2, 2012)(and cases cited therein); *DeClaris Associates v. McCoy Workplace Solutions, L.P.*, 331 S.W. 3d 556, 560 (Tex. App.--Houston [14th Dist. Feb. 3, 2011)("simple approval of the form and substance of the judgment does not suffice to establish a judgment as an unappealable agreed judgment; the record of the case showed that the case was contested throughout the proceedings); *Durden v. McClure,* 281 S.W. 3d 137, 140 (Tex. App.--San Antonio Nov. 9, 2008)(same); *Bonner v. Texas Children's Hosp.*, No. 13-03-228-CV, 2006 WL 349510, at *2 & n.5 (Tex. App.--Corpus Christi Feb. 18, 2006)(and cases cited therein); *Cash v. Cash*, 2005 WL 1787552, at *3 n.7 (Tex. App.--Austin July 27, 2005); *Leeper v. Woodrick*, No. 2-04-371-CV, 2005 WL 1475614, at *2 (Tex. App.--Fort Worth June 23, 2005); *Baw v. Baw*, 949 S.W. 2d 764, 766-67 (Tex. App.--Dallas 1997, no pet.).

Furthermore, this Court observes the situation here is distinguishable from the usual agreed or consent judgment.  The ruling made by the state court abating and dismissing HSBC's application for expedited non-judicial foreclosure was not discretionary, but was mandated by law, by Texas Rule of Civil

Procedure 736(10), once the Murphys filed their suit contesting HSBC's right to foreclose.  Furthermore the state court's dismissal as a matter of law was not appealable under Texas Rule of Civil Procedure 736(8) then in effect, and thus the differing interpretations of the effects of "approval," "approval of form only," and "approval of form and substance" are irrelevant.

The Murphys insist, and point to the docket sheet as evidence, that in HSBC's first suit for expedited non-judicial foreclosure, the Murphys opposed the motion to dismiss at hearings on three different dates, with the judge ultimately ruling that Texas Rule of Civil Procedure 736(10) mandated dismissal.  They assert that it is customary for the trial judge to instruct the prevailing party to prepare an order and have the form approved by counsel, so the order that issued was not an agreed order, nor was it styled as such as would be required by Local Rule 3.3.5 if it were an agreed order.  The Court agrees.

Accordingly, the Court concludes that there was no agreement of the parties to dismiss HSBC's first suit for expedited, non-judicial foreclosure, and thereby the dismissal did not abandon the 2008 acceleration of the note.

The Magistrate Judge concluded that under *Holy Cross*, abandonment can be accomplished unilaterally when the noteholder decides to accept payments form a debtor without exacting any remedies to which it was entitled under the law.  44 S.W. 3d at 566-67.  She also ruled

Contrary to the Magistrate Judge's ruling, the Court agrees with HSBC that it is the law that a note holder cannot unilaterally rescind acceleration over the objection of the debtor. *Manes v. Bletsch*, 239 S.W. 307, 308 (Tex. App.--Austin 1922)(***where debtor objects*** to recall of acceleration, payee cannot unilaterally revoke payor's exercise of his option to accelerate)(emphasis added by this Court); *Denbina,* 516 S.W. 2d at 463 ("It is generally held that the action of the obligee in exercising his option to accelerate payment and declare all of the notes of a series due, ***absent some object[ion]*** of the maker,[24] does not render irrevocable his right to waive the exercise of the option . . . "), *citing Manes*, 239 S.W. 307; *Callan*, 2014 WL 1314831, at *5. Here the evidence demonstrates that the Murphys did object and did not agree to the dismissal of HSBC's suit for expedited, non-judicial foreclosure and to Wells Fargo and HSBC's efforts to enforce the property lien and foreclose on their home.

Furthermore, in *San Antonio Real Estate*, 94 Tex. at 446, 61 S.W. at 388-89, the Texas Supreme Court held that in addition to joint action or agreement to do away with the default and restore the contract to its original condition, the note holder can waive its own rights, such as a right to acceleration, and if the debtor acts in reliance on its inference from the note holder's conduct or declarations that the note holder has waived its right, the note

---

[24] In other words, where there is agreement.

holder can be estopped from relying on the default and asserting
that right to accelerate:

> It is not in the power of the creditor by his acts alone
> to change the rights of the parties resulting from the
> maturity of the debt.  But both parties, by their ***joint
> action***, may so alter such rights that the creditor would
> no longer have the right to demand nor the debtor to pay
> the entire indebtedness.  If it be true that, in a
> contract like this, where the installments are payable at
> given dates, and the debtor has not the right before
> default to pay at any other times, such debtor acquires
> the right, after default, to pay all of the debt at once
> (a question which we need not now decide), any agreement
> the parties might make, which would have the effect of
> obviating the default and restoring the contract to its
> original condition as if it had not been broken, would be
> supported by a sufficient consideration.  The debtor
> would secure from the creditor further credit, and give
> up his right to discharge the whole liability at once.
> .  .  .  But, aside from this, while neither party by
> separate action or nonaction could impair the rights of
> the other, each could waive his own rights as they
> accrued from the default in payment of an installment so
> as to estop him from relying upon such default.  To
> accomplish this, it would only be necessary that each
> should so act as to justify the other in believing and
> acting upon the belief that the effect of the failure to
> pay an installment was to be disregarded, and that the
> contract should stand as if ether had been no default.
> The principle of estoppel by waiver would, we think, have
> proper application in such a case.  An agreement or
> waiver having the effect supposed may be inferred from
> the conduct and declarations of the parties as well as
> evidenced by their express stipulations. [citations
> omitted]

*Id.* (emphasis added by this Court).  *See Callan*, 2014 WL 1314831,
at *6.  Here the evidence demonstrates that there was no agreement
of the parties and no joint action, nor did the HSBC waive its own
rights to accelerate.  HSBC did accelerate the note and continued
to do so within the four-year limitations period after it won the

summary judgment in the First Lawsuit, which is on appeal.  Thus there was no abandonment of the 2008 acceleration.  HSBC's failure to file its second suit timely is its undoing.

In sum, acceleration of a note secured by real property by a note holder exercising its option to do so can be abandoned by agreement or other action of the parties or by the holder if it continues to accept payments without exacting any remedies available to it upon declared maturity.  *Khan*, 371 S.W. 3d at 353.  Here there was no agreement and no joint action to constitute abandonment of the acceleration.  Moreover HSBC has not acted in any way to show that it abandoned acceleration of the Note under statutory remedies available to it.  There was no agreement and HSBC accordingly has not and could not file a written agreement in the county clerk's office to suspend the four-year limitations period under § 16.036, nor did  HSBC file suit for judicial foreclosure.  Although a note holder can abandon acceleration of the note by continuing to accept payments without seeking any remedies available to it upon declared maturity, there is no evidence the Murphys have tendered any payments that were accepted by HSBC, and their denial that they have made such payments has not been controverted by HSBC.  Although HSBC did not have to, it could have, but did not, file a counterclaim seeking a judgment that the Murphys were in default in the Murphys' first state court suit.  Nor has HSBC engaged in any overt, public act evidencing withdrawal

of the acceleration.  Thus there is no evidence that the June 12, 2008 acceleration was abandoned or that the four-year statute of limitations was extended.  Therefore limitations expired four years later, on June 12, 2012.  To allow HSBC to unilaterally "re-accelerate" the Note with its second timely notice of intent to accelerate in 2011 and its untimely second notice of acceleration on June 20, 2012 would make a nullity of the statute of limitations.  Accordingly HSBC's second suit seeking expedited non-judicial forfeiture, filed in August 2012, is time-barred, and HSBC's real property lien and a power of sale to enforce the real property lien is void.

In their Original Petition the Murphys have requested an award of reasonable attorney's fees.  Because they are *pro se* and they fail to show a legal basis for such an award, the Court finds currently that they are not entitled to such an award, but grants them leave to submit a brief on the issue and a request satisfying the requirements of *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714, 717-19 (5th Cir. 1974), within twenty days of entry of this Opinion and Order.  If they do so, HSBC shall file a timely response.

Accordingly, the Court

ORDERS that its Opinion and Order of September 12, 2013 (#19) is VACATED; Defendants' motion to dismiss is DENIED; the Murphys' objection that HSBC failed to abandon its 2008 acceleration of the

note is sustained and their motion for summary judgment on limitations is GRANTED; and HSBC's real property lien and a power of sale to enforce the real property lien is void  .  Moreover, because this suit is time-barred, it does not matter what happens in the appeal of the Murphys' state court suit regarding HSBC's standing to bring suit and in light of the time-bar it is irrelevant.  Therefore the Court

ORDERS that the stay is LIFTED and this case is DISMISSED with prejudice.  A final judgment shall issue by separate order.

**SIGNED** at Houston, Texas, this  23rd  day of  April , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-32-