United States District Court
Southern District of Texas
**ENTERED**
January 30, 2017
David J. Bradley, Clerk

`

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK O'BRIEN MURPHY a/k/a O'BRIEN MURPHY AND BEVERLY MURPHY, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-12-3278 |
| HSBC BANK USA AS TRUSTEE FOR THE WELLS FARGO ASSET SECURITIES CORPORATION HOME EQUITY ASSET-BACKED CERTIFICATES, SERIES 2006-1, | § § § § § § | |
| Defendant. | § § | |

<u>OPINION AND ORDER</u>

Pending before the Court in the above referenced suit to quiet title and for declaratory judgment, removed from the 270th District Court of Harris County, Texas on diversity jurisdiction, and challenging (1) the validity of the assignment of Plaintiffs Patrick O'Brien Murphy and Beverly Murphy's ("Plaintiffs'" or the "Murphys'") mortgage note to HSBC Bank USA as Trustee for the Wells Fargo Asset Securities Corporation Home Equity Asset-Backed Certificates, Series 2006-1 by Wells Fargo Bank, N.A. ("HSBC") and/or the securitization of the loan and (2) HSBC's standing to foreclose, are the following matters:

(a) Defendant HSBC's first motion for partial summary judgment (instrument #40);

(b) Plaintiffs' related motion to continue to conduct

-1-

discovery (#42);

(c) HSBC's second motion for partial summary judgment (#65);

(d) United States Magistrate Judge Frances Stacy's memoranda and recommendations (#46 recommending granting of HSBC's first motion for partial summary judgment and denying Plaintiffs' motion to continue to conduct discovery) and #83 (recommending granting of HSBC's second motion for partial summary judgment);

(e) Plaintiffs' objections to the memoranda and recommendations (#46 and 83, respectively); and

(f) HSBC's motion to strike (#74) Plaintiffs' motion to compel (#66).

As a housekeeping matter, the Court finds HSBC's motion to strike (#74) to be moot as United States Magistrate Judge Frances Stacy ruled on the motion to compel (#77) on July 12, 2016.

## Standards of Review

*I.   Motion for Summary Judgment*

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other

facts immaterial." *Celotex*, 477 U.S. at 323.  The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'"  *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986).  "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Id., quoting Liberty Lobby*, 477 U.S. at 252.  The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'"  *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991). The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13. The Court may not make credibility determinations. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009), *citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007).

## II.  *Magistrate Judge's Memorandum and Recommendation*

Title 28 U.S.C. § 636(b)(1) provides,

(A) A judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.  A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate judge to conduct hearings including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

Similarly, nondispositive matters may be referred to the magistrate judge under Rule 73(a), and dispositive under Rule 72(b).

Objections to the Magistrate Judge's memorandum and recommendation must specifically identify the findings or recommendations for which the party seeks reconsideration. *Byars v. Stephens*, No. 5:13-CV-189-DAE, 2014 WL 1668488, at *2 (Apr. 14, 2014), *citing Thomas v. Arn*, 474 U.S. 140, 151 (1985).  The court does not have to consider "'[frivolous, conclusive, or general objections.'" *Id., citing Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A determination by the Magistrate Judge to which the party specifically objects regarding a dispositive

matter must be reviewed *de novo* under 28 U.S.C. § 636(b)(1)(c). The Magistrate Judges's decision about a nondispositive matter is reviewed under a "clearly erroneous or contrary to law" standard. 28 U.S. C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)("The district judge . . . must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law."). The reviewing district court may determine that a factual finding is "clearly erroneous" when it is "left with the definite and firm conviction that a mistake has been committed." *U.S. v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007). Findings to which no specific objections are made require that the Court only to decide whether the memorandum and recommendation is clearly erroneous or contrary to law. *U.S. v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). Under this deferential standard of review the court must affirm the magistrate judge's description unless it finds that based on all the evidence it is "left with a definite and firm conviction that a mistake has been committed." *Baylor Health Care Sys. v. Equitable Plan Services, Inc.*, 955 F. Supp. 2d 678, 689 (N.D. Tex. 2013). *quoting U.S. v. Gypsum Co.*, 333 U.S. 364, 395 (1948)The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The district court may review and reconsider any pretrial matter decided by the magistrate judge "where it has been shown

that the magistrate judge's order is clearly erroneous or contrary to law."   The district court reviews the magistrate judge's legal conclusions *de novo.*; *Tolan v. Cotton*, H-09-1324, 2015 WL 5332171, at *1 (S.D. Tex. Sept. 14, 2015).   In the "vast area of choice that remains to the magistrate judge who has properly applied the law to fact findings that are not clearly erroneous," the standard of review is abuse of discretion.   *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 204, 208 (N.D. Tex. 1996); *Bancroft Life & Cas. ICC, Ltd. v. FFD Resources II, LLC*, 884 F. Supp. 2d 535, 537-38 (S.D. Tex. 2012).   The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

*III. Motion for Continuance to Allow for Further Discovery for Response to Motion for Summary Judgment (#42)*

It is well established in the Fifth Circuit that "a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment."   *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990); *Brown v. Livingston*, 524 Fed. Appx. 111, 115 (5th Cir. Man 2, 2013).   To obtain a continuance to allow for further discovery before responding to a motion for summary judgment, the

nonmovant "must present specific facts explaining his inability to make a substantive response . . . and by specifically demonstrating 'how postponement of a ruling on the motion will enable him by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of material fact.'" *Id., quoting SEC v. Spence & Green Chemical Co.*, 613 F.2d 896, 901 (5th Cir. 1980), *cert. denied*, 449 U.S. 915 (1976); *McCarty v. U.S.*, 929 F.2d 1085, 1088 (5th Cir. 1991).  Vague claims that "discovery will produce needed, but unspecified, facts" are not adequate to warrant a continuance. *Id., citing Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 873 (5th Cir. 1978).  Under Rule 56(d) a party bears the burden of demonstrating by affidavit or declaration or "equivalent statement preferably in writing" that he cannot adequately present facts necessary to defend against a motion for summary judgment without a continuance and additional discovery. *Brown v. Livingston*, 524 Fed. Appx. at 115, *citing Access Telecom, Inc. v. MCI Telecomms Corp.*, 197 F.3d 694, 719 (5th Cir. 1999)(stating that issue of inadequate discovery is waived when movant fails "to file a motion for continuance with an attached affidavit stating why the party cannot present by affidavit facts essential to justify the party's opposition"); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  The nonmovant "must present specific facts explaining his inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating 'how postponement of a ruling on

the motion *will* enable him by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of material fact.'" *Washington*, 901 F.2d at 1285, *citing Gossett*, 569 F.2d at 873.

## Applicable Law

### I.  Suit to Quiet Title

A suit to quiet title "is an equitable action that involves clearing a title of an invalid charge against the title." *Longoria v. Lasater*, 292 S.W. 3d 156, 165 n.7 (Tex. App.--San Antonio 2009, pet. denied); Texas Property Code § 22.001.   The plaintiff must rely on the strength of his own title, and not on the weakness of the defendant's title.   *Hunt v. Heaton*, 643 S.W. 2d 677, 679 (Tex. 1983).   A party seeking to quiet title must show "(1) he has an interest in a specific property, (2) title to the roperty is affected by a claim by Defendant, and (3) the claim, although facially valid, is invalid or unenforceable."   *Morris v. CitiMortgage, Inc.*, No. 4:12cv675-RAS-DDB, 2013 WL 2297203, at *2 (E.D. Tex. May 24, 2013).   Moreover the plaintiff "must allege right, title, or ownership in himself . . . with reasonable certainty to enable the court to see he . . . has a right of ownership that will warrant judicial interference."   *Wright v. Matthews*, 26 S.W. 3d 575, 578 (Tex. App.--Beaumont 2000, pet. denied).   The plaintiff bears the burden of proving his superior equity and right to relief, i.e., the right, title, or ownership in

himself as a matter of law, and that the defendant's adverse claim "is a cloud on the title that equity will remove. " *Hahn v. Love*, 321 S.W. 3d 517, 531 (Tex. App.--Houston [1st Dist. 2009, pet. denied).

## II. *Res Judicata*

In *Van Duzer v. U.S. Bank National Assoc.*, 995 F. Supp. 2d 673, 685 (S.D. Tex. 2014), *aff'd*, 582 Fed. Appx. 279 (5th Cir. 2014), the Honorable Sim Lake explained,

> "A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *E.D. Sys. Corp. v. Sw. Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir. 1982); *see also Norris [v. Hearst Trust*, 500 F.3d 454, 460-61 (5th Cir. 2007)]("[T]he preclusive effect of prior state court proceedings on federal proceeding is determined by the treatment those state court proceedings would receive in the courts of the state--here, Texas--in which those prior proceedings were held."); *Rollins v. Dwyer*, 666 F.2d 141, 144 (5th Cir. 1982)("A state court judgment commands the same res judicata effect from the federal court as it would have in the court that rendered it, without regard to whether the state court applied state or federal law.").  Therefore, the court must look to Texas law to determine the preclusive effect of the state courts' decision in the Plaintiffs' prior lawsuit.

Thus in this case, the Court applies Texas law since the prior decision was rendered in a Texas state court.

Claim preclusion or res judicata "bars the litigation of claims that either have been litigated or should have been litigated in an earlier suit." *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005), *cert. denied*, 547 U.S. 1055 (2006); *see also Allen v. McCurry*, 449 U.S. 90, 94

(1980)("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issue that were or could have been raised in that action."); *Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Savings*, 837 S.W. 2d 627, 629 (Tex. 1992); *see also Igal v. Brightstar Information Tech. Group, Inc.*, 250 S.W. 3d 78, 86 (Tex. 2008)("Res judicata bars the relitigation of claims that have been finally adjudicated or that could have been litigated in the prior action."). A claim is barred by res judicata when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the claim or cause of action was involved in both actions." *Id.* Under Texas law, to warrant application of res judicata, the party must show "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W. 2d 644, 652 (Tex. 1996), *citing Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W. 2d 768, 771-72 (Tex. 1979). Whether a prior judgment has a res judicata effect is a question of law for the court. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W. 3d 430, 449 (Tex. 2007); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004).

Generally there is no *res judicata* preclusion against non-parties. *Maxwell v. U.S. Bank, N.A.*, 544 Fed. Appx. 470, 473 (5th Cir. 2012), *citing Hansberry v. Lee*, 311 U.S. 32, 40 (1940)("[O]ne is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *Amstadt*, 919 S.W. 2d at 652, citing Tex. Civ. Prac. & Rem. Code § 37.006(a).  An exception to this rule is when there is a "pre-existing substantive legal relationship between the person to be bound and a party to the judgment." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  Preexisting legal relationships between parties arising from "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor" are adequate to establish the requisite privity for res judicata.  *Id.; see also Amstadt*, 919 S.W. 2d at 653 ("'[A]ll persons are privy to a judgment whose succession to the right of property therein adjudicated are derived through or under one or the other of the parties to the action and which accrued subsequent to the commencement of the action.'"), *citing Kirby Lumber Corp. v. Southern Lumber Co.*, 145 Tex. 151, 196 S.W. 2d 387, 388 (1946)("Privity, in this connection, means the mutual or successive relationship to the same rights of property.").  The preexisting relationship between a mortgage holder, a mortgage servicer, and a mortgage lender usually is sufficient to establish privity for res judicata purposes. *Maxwell*, 544 Fed. Appx. at 473 (finding privity

-13-

between lender and MERS acting as nominee for lender's successor and assigns).

To determine if "the same claim or cause of action was involved in both actions," the court uses a transactional test, under which "a prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Davis*, 383 F.3d at 313, *citing Petro-Hunt, LLC v. U.S.*, 365 F.3d 385, 395-96 (5th Cir. 2004)(*quoting the Restatement (Second) of Judgments* § 24(1)(1982). "What grouping of facts constitutes a 'transaction' or a 'series of transactions' must 'be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id., citing id., quoting id. See also Barr*, 837 S.W. 2d at 630-31 (affirming transactional approach to res judicata). The key inquiry under this test is "whether the two actions are based on the 'same nucleus of operative facts.'" *Test Masters*, 428 F.3d at 571, *quoting Davis*, 383 F.3d at 312. Thus the court examines the facts in each complaint to decide if they are part of the same transaction or series of transactions that arise from the same nucleus of operative facts. *Davis*, 383 F.3d at 313; *Motient Corp.*

*v. Dondero*, 269 S.W. 3d 78, 83 (Tex. App.--Dallas 2008).

III.  *Wrongful Foreclosure*

Under Texas law debtors may sue for injunctive and declaratory relief to stop wrongful foreclosure.  *Miller v. Homecomings Financial LLC*, 881 F. Supp. 2d 825, 828 (S.D. Tex. 2012), *citing inter alia Martin v. New Century Mortgage Co.*, 377 S.W. 3d 79, 81-82 (Tex. App.--Houston [1st Dist.] 2012).  Once the debtor files such a suit in a court of competent jurisdiction, Texas Rule of Civil Procedure 736.11[1] imposes an automatic stay on foreclosure

---

[1] Rule 736.11 ("Automatic Stay and Dismissal if Independent Suit filed") states in relevant part,

(a) A proceeding or order under this rule is automatically stayed if a respondent files a separate, original proceeding in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed prior to 5:00 p.m. on the Monday before the scheduled foreclosure sale.

(b) Respondent must give prompt notice of the filing of the suit to petitioner or petitioner's attorney and the foreclosure trustee or substitute trustee by any reasonable means necessary to stop the scheduled foreclosure sale.

(c) Within ten days of filing suit, the respondent must file a motion and proposed order to dismiss or vacate with the clerk of the court in which the application was filed giving notice that respondent has filed an original proceeding contesting the right to foreclose in a court of competent jurisdiction.  If no order has been signed, the court must dismiss a pending proceeding.  If an order has been signed, the court must vacate the Rule 736 order.

(d) If the automatic stay under this rule is in effect,

proceedings.  *Id.*   Texas recognizes a number of grounds for challenging a foreclosure sale:

> no default in payment by the debtor, *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W. 2d 671, 675 (1942); violations of the conditions and limitations of the trustee's power of sale under the deed of trust (*id.*); noncompliance with the statutory notices and other requirements of a non-judicial sale, *Lido Inter., Inc. v. Lambeth*, 611 S.W. 2d 622 (Tex. 1981); and . . . no "contractual standing" by the party seeking to foreclose, *Martin*, 377 S.W. 3d at 81-82.

*Id.* at 828.

The Texas Property Code establishes that only the mortgagee (§ 51.0001(4)[2]) or the mortgage servicer (§ 51.0001(3)[3]), acting on

---

any foreclosure sale of the property is void.  Within 10 business days of notice that the foreclosure sale was void, the trustee or substitute trustee must return to the buyer of the foreclosed property the purchase price paid to the buyer.

(e)  The court may enforce the Rule 736 process under chapters 9 and 10 of the Civil Practices and Remedies Code.

[2] Section 51.0001(4) defines a mortgagee as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system; or (c) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  A "book entry system" refers to a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns."  Tex. Prop. Code § 51.0001 ("Definitions").  A "security interest means a deed of trust, mortgage, or other contract lien on an interest in real property."  *Id.*

[3] A mortgage servicer is "the last person to whom the mortgagor has been instructed by the current mortgagee to send payment for the debt secured by the security instrument.  A mortgagee may be the mortgage servicer."  Tex. Prop. Code §

behalf of the current mortgagee, have standing to commence a non-judicial foreclosure sale. The owner of the note who proves by testimony and/or documentation that he acquired the note by transfer in an unbroken chain of assignments also has standing to foreclose under common law. *Id.*, *citing Martin,* 377 S.W. 3d at 84.

As a general rule a plaintiff/borrower/mortgagee lacks standing to attack the validity of any assignment of a Note or Deed of Trust if he is not a party to the assignment, or an agent or assignee of a party or a third-party beneficiary of the agreement; thus a number of Texas courts have held that a mortgagee lacks standing to challenge the validity of any assignment of the Note because he was not a party to the assignment. *Dale v. Alethes, LC*, A-13-CV-012 LY, 2011 WL 12114867, *4 (W.D. Tex. July 1, 2013), report and recommendation adopted, 2013 WL 12116330 (W.D. Tex. July 26, 2013)[4];

---

51.0001(3).

    [4] *Citing inter alia Soufimanesh v. U.S. Bank, N.A.*, No. 4:12cv295, 2013 WL 3215744, *7-8 (E.D. Tex. June 24, 2013)(plaintiff not a party to assignments by MERS and therefore did not have standing to challenge validity of assignments); *Marsh v. JPMorgan Chase Bank, N.A.*, 888 F. Supp. 2d 805, 808 (W.D. Tex. 2012)(plaintiff mortgagees were not parties to assignment of Deed of Trust and therefore lack standing to challenge assignment); *Morlock, LLC v. JP Morgan Chase Bank, N.A.*, Civ. A. No. H-12-1448, 2012 WL 3187918, at *5 (S.D. Tex. Aug. 2, 2012)("Courts in this circuit have repeatedly held that plaintiffs have no standing to challenge such assignments unless they become a party, agent or assignee of a party, or a third-party beneficiary of the agreement"); *Willeford v. Wells Fargo Bank, N.A.*, Civ. A. No. 3:12-CV-0448-B, 2012 WL 2864499, at *2 (N.D. Tex. July 12, 2012)(courts have "consistently held" that borrowers do not have standing to challenge assignment of their mortgages because they are not parties to those assignments).

*DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011); *Conrad v. Texas BAC Home Loan Servicing, LP*, No. 07-12-00305-CV, 2014 WL 545726, at *3 (Tex. App.--Amarillo Feb. 7, 2014).

Other courts have held that under certain circumstance a mortgagor-plaintiff may have standing to challenge a mortgage assignment. *See, e.g., Calderon v. Bank of America*, 941 F. Supp. 2d 753, 764-67 (W.D. Tex. 2013)(and cases cited therein). The principal exception to the general rule is where an assignee of a claim sues the obligor for performance:

> The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment *void*, but may not defend on any ground which renders the assignment *voidable only*, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same clam twice.

*Id.* at 764, *citing Tri-Cities Construction, Inc. v. American National Insurance Co.*, 523 S.W. 2d 426, 430 (Tex. Civ. App.--Houston (1st Dist.) 1975), *citing Glass v. Carpenter*, 330 S.W. 2d 530 (Tex. Civ. App.--San Antonio 1959, writ ref'd n.r.e.); *see also Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 224-25 (5th Cir. 2013)(borrower has standing to challenge assignments if void, but not if merely voidable). This holding accords with black letter principles of contract law:

---

Generally the rules of contract interpretation apply to construction of a mortgage. 5 Banking Law § 120.2.

A void contract is "invalid or unlawful from its inception" and therefore cannot be enforced.  17A C.J.S. Contracts § 169.  Thus, a mortgagor who is not a party to an assignment between mortgagees may nevertheless challenge the enforcement of a void assignment.  A *voidable* contract, on the other hand, "is one where one or more of the parties have the power, by manifestation of an election to do so, to avoid the legal relations created by the contract."  *Id.*  Accordingly only one who was a *party* to a voidable contract has standing to challenge it.

*Calderon,* 941 F. Supp. 2d at 764-65.

"Under Texas law, a secured lender 'must bring suit for . . . the foreclosure of a real property lien not later than four years after the day the cause of action accrues.'"  *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015), *citing* Tex. Civ. Prac. & Rem. Code § 16.035(a).  The applicable four-year statute of limitations for real property actions is found in Texas Civil Practice and Remedies Code § 16.035(a), addressing (a) judicial foreclosures, and (b) nonjudicial foreclosures.[5]  *Lawson v. GMAC*

---

[5] Section 16.035 ("Lien on Real Property") states,

(a) a person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.

(b) a sale of real property under a power of sale in a mortgage or deed of trust that creates a property lien must be made not later than four years after the day the cause of action accrues.

(c) The running of the statute of limitations is not suspended against a bona fide purchaser for value, a lienholder, or a lessee who has no notice or knowledge of the suspension of the limitations period and who acquires an interest in the property when a cause of

*Mortg., LLC*, Civ. A. No. 3:12-CV-00212, 2013 WL 1948128, at *2 (S.D. Tex. May 9, 2013). Under § 16.035(e), for notes payable in installments and a real property lien, limitations does not begin to run until the maturity date of the last note, obligation, or installment. *Id.* Furthermore under black letter Texas law, "'If a note or deed of trust secured by real property contains an optional acceleration clause, the default does not ipso facto start limitations running on the note. Rather, the action accrues only

_____

action on an outstanding real property lien has accrued for more than four years, except as provided by:

    (1) Section 16.062, providing for suspension in the even of death; or

    (2) Section 16.036, providing for recorded extensions of real property liens.

(d) On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void.

(e) If a series of notes or obligations payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date if the last note, obligation, or installment.

(f) The limitations period under this section is not affected by Section 3.118, Business & Commerce Code.

(g) In this section, "real property lien" means:

    (1) a superior title retained by a vendor in a deed of conveyance or a purchase money note; or

    (2) a vendor's lien, a mortgage, a deed of trust, a voluntary mechanic's lien or a voluntary materialman's lien on real estate, securing a note or other written obligation.

-20-

when the holder actually exercises its option to accelerate.'" *Id.,* *quoting Holy Cross Church of God in Christ v. Wolf*, 44 S.W. 3d 562, 566 (Tex. 2001)("Section 16.035 modifies the general rule that a claim accrues and limitations begins to run on each installment when it becomes due."), *citing Hammann v. H.J. McMullen & Co.*, 122 Tex. 476, 62 S.W. 2d 59, 61 (1933), and *Curtis v. Speck*, 130 S.W. 2d 348, 351 (Tex. Civ. App.--Galveston 1939, writ ref'd); *Landers v. Nationstar Mortgage, LLC*, 461 S.W. 3d 923, 925 (Tex. App.--Tyler 2015, pet. denied*).* The holder of the note must send both a notice of intent to accelerate and a notice of acceleration to exercise this option. *Boren*, 807 F.3d at 104. For acceleration to be effective there must be a clear and unequivocal notice of intent to accelerate followed by a clear and unequivocal notice of acceleration. *Id.*

Even if the holder has accelerated a note upon default, acceleration can be abandoned "'by agreement or other action of the parties.'" *Id., quoting Khan v. GBAK Props.*, 371 S.W. 3d 347, 353 (Tex. App.--Houston [1ˢᵗ Dist.] 2012). The holder of the note can abandon acceleration if it continues to accept payments without pursing any remedies available to it upon declared maturity. *Boren*, 807 F.3d at 104, *citing Holy Cross*, 44 S.W. 3d at 566-67. If acceleration is abandoned, the result is that the contract is restored to its original condition, including the note's original maturity date. *Khan*, 371 S.W. 3d at 353.

In *Boren*, noting that the Texas Supreme Court had not yet determined whether a lender, unilaterally, may abandon acceleration of a note and if so, by what actions, the Fifth Circuit made an *Eerie* guess as to how the high court would rule. 807 F.3d at 105. The panel chose to defer to Texas' intermediate appellate courts which were in agreement that "the holder of a note may unilaterally abandon acceleration [thereby restoring the note to its original condition] after its exercise, so long as the borrower neither objects to abandonment nor has detrimentally relied on the acceleration." *Id.* at 105. It concluded that the Texas Supreme Court most likely would hold that a lender may unilaterally abandon acceleration of a note by sending notice to the borrower that the lender no longer seeks to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms. *Id.*

**HSBC's First Motion for Partial Summary Judgment (#40)**

HSBC briefly summarizes the facts underlying this suit. In 2006 the Murphys refinanced a loan on their property at 503 Flaghoist Lane, Houston, Texas (the "Property") with Wells Fargo Bank, N.A., as evidenced by a Texas Home Equity Rate Note (the "Note") and Security Instrument (the "Deed of Trust") entered into by Plaintiffs and the original lender, Wells Fargo Bank, N.A. Original Petition, #1-3, Ex. B.2, ¶ 3; *Id.*, Exs. A,B. Plaintiffs concede that they stopped making payments on the loan in 2008 "in

order to compel the Bank to negotiate with them" about refinancing it. Pet. at ¶ 8. Therefore Wells Fargo, as the mortgage servicer for HSBC, sent the Murphys a notice of intent to accelerate the Note in April 2008 and then in June 2008 a notice of acceleration. On July 12, 2008 it sent them an application for expedited non-judicial foreclosure pursuant to Texas Rule of Civil Procedure 736.

To stop the foreclosure, the Murphys filed suit in the 55th Judicial District Court, at first alleging fraud and breach of contract, but later adding a claim for violation of the Texas Deceptive Trade Practices-Consumer Protection Act. *Patrick O'Brien Murphy aka O'Brien Murphy and Beverly Murphy v. Wells Fargo Bank, N.A. and HSBC Bank USA*, Cause No. 2008-67808 (the "2008 Lawsuit"). #40, Ex. A, Original Petition of the 2008 Lawsuit. While Plaintiffs never challenged HSBC's standing or right to foreclose in this action, they were aware of and could have asserted such a claim, as evidenced by the content of their motions and filings in that suit. Ex. A, Exs. A.1 and A.2. Summary judgment in the 2008 lawsuit was granted in favor of Defendants and was recently affirmed by the Texas Supreme Court. *Murphy v. Wells Fargo Bank, N.A.*, 14-11-00560-CV, 2013 WL 510129, at *9 (Tex. App.--Houston [14[th] Dist.] Feb. 12, 1013), *aff'd in part* relating to summary judgment, but *rev'd in part* regarding trial court's granting of attorney's fees to Wells Fargo, No. 13-0236, 2015 WL 500636 (Tex. Feb. 6, 2015)(rehearing denied).

After the 2008 summary judgment in Defendants' favor was issued

in the district court, Plaintiffs lived at the Property without making any mortgage payments for four years.  HSBC then sent a new notice of intent to accelerate in December 2011, which HSBC contends abandoned the 2008 acceleration, and followed it with a new notice of acceleration in June 2012,  Ex. B (the "2012 Foreclosure Application," which is a matter of public record[6]).  Around August 16, 2012 HSBC filed a second application for expedited non-judicial foreclosure under Rule 736, Cause No. 2012-46993, with the same unchanged information about the ownership, assignment, and securitization of the loan as that in the first  application.  To stop this effort to foreclose, the Murphys filed their Original Petition in the 151st Judicial District of Harris County, *Patrick O'Brien Murphy aka O'Brien Murphy and Beverly Murphy v. Wells Fargo Bank, N.A. and HSBC Bank USA as Trustee For Wells Fargo Asset Securities Corporation Home Equity Asset-Backed Certificates Series 2006-1*, Cause No. 2012-56500.  #1-3, B.2 (the "2012 Lawsuit"). Subsequently the case was transferred to the 270th Judicial District on November 5, 2012, and then removed to this court based on diversity jurisdiction.

The Petition in the instant suit challenges the assignment and securitization of the loan, which took place prior to the filing of

---

[6] Courts regularly take judicial notice of public records, including court documents, where they are directly relevant to the issue in dispute.  *Brown v. Bridges*, 3:12cv-4947-P, 2016 WL 3660666, at *2 (N.D. Tex. Jan 26, 2016 (and cases cited therein).

the 2008 Lawsuit.  The Petition alleges that (1) HSBC is barred from seeking foreclosure by the statute of limitations in Tex. Civ. Prac. & Rem. Code § 16.035;[7] (2) HSBC in not a holder in due course of a party authorized to enforce the note and thus has no standing to bring a foreclosure action; and (3) the assignment of the note from Wells Fargo to HSBC is void.  The Murphys request the Court to quiet title and to rule that the Deed of Trust is void and that Plaintiffs are entitled to a title to the Property free and clear of any claim by HSBC or Wells Fargo based on alleged defects in HSBC's chain of title.  Petition at ¶ 19.

HSBC's first motion for partial summary judgment argues that Plaintiffs' claims are barred by res judicata, as Magistrate Judge Stacy found.  Now that Plaintiffs are seeking to challenge HSBC's standing to foreclose based on alleged defects in HSBC's chain of title and other purported irregularities in the securitization of Plaintiffs' loan (Petition ¶¶ 9-10), HSBC argues that in the prior suit between the same parties, Plaintiffs raised, though they did not plead, the same challenge, and that it was rejected by the Texas state court.  Moreover Plaintiffs could have litigated HSBC's standing to foreclose and any other challenge regarding the chain

---

[7] On April 23, 2014 this Court initially granted final summary judgment in favor of HSBC on limitations ground, finding that HSBC's lien and power of sale to enforce the real property lien were void and dismissing the case (#31), but vacated that order and final judgment on March 25, 2015 (#38) and reopened the case.

of title or securitization of Plaintiffs' loan in the prior action, but did not do so.

Although the causes of action in Plaintiffs' 2008 Lawsuit related to alleged promises made by Wells Fargo before entering into the Loan, Plaintiffs at least six times (#140, Exs. A.3-A.8) challenged HSBC's capacity and standing to foreclose based on alleged defects in its chain of title to the Note. Plaintiffs moved for summary judgment, charging that there was "no evidence that Wells Fargo is the present owner and holder of the instrument at issue" and that Wells Fargo "has not produced any documents reflecting the transfer of the instrument." Plaintiffs' Traditional and No Evidence Motion for Summary Judgment, #40 Ex. A.3, ¶¶ 6 and 7. In response to Defendants' current first motion for summary judgment, Plaintiffs assert that "Wells Fargo transferred ownership of the indebtedness in issue in this lawsuit, and cannot identify the owners and holders of the debt," and thus lacked standing to pursue its counterclaim. Ex. A.4 ¶ 2. They also repeatedly challenged the compliance of the assignment from Wells Fargo to HSBC and the Pooling and Servicing Agreement (the "PSA"). Ex. A.6, A.7. In *Reinagel*, 735 F.3d at 224-25 and 228, the Fifth Circuit held that an obligor cannot contest a voidable assignment and therefore that a borrower does not have standing to challenge an assignment on the grounds that the assignment violates a PSA, to which the borrower was not a party nor third-party beneficiary and regarding which

there is no evidence that the parties to the PSA intended the borrower to be a party or a third-party beneficiary; "facially valid assignments cannot be challenged for want of authority except by the defrauded assignor."  HSBC notes that in the instant case Plaintiffs argue the assignment to the trust was invalid because it violated the terms of the PSA, and that the loan's assignment occurred after May 30, 2006, the Closing Date of the PSA, rendering the assignment invalid.   Thus their challenge, even if true, would make the assignment voidable.  *Reinagel*, 735 F.3d at 228; *Omrazeti v. Aurora Bank FSB*, 12-CV-00730-DAE, 2013 WL 3242520, at *7 (W.D. Tex. June 25, 2013)("[S]ince even an after-the-deadline transfer of the Notes to the trust would merely be voidable at the option of the trust's beneficiaries, Plaintiff has no standing to challenge that assignment."); *Lopez v. Sovereign Bank, N.A.*, Civ. A. No. H-13-1429, 2014 WL 1315834, at *8 (S.D. Tex. Mar. 31, 2014)(construing *Reinagel* to hold that a challenge based on a mortgage being transferred after the date listed in the relevant PSA "could not provide the *Reinagel* plaintiffs relief because they lacked standing to challenge the violation . . . . because they were neither parties to the [PSA] nor intended third-party beneficiaries.").

### The Magistrate Judge's Memorandum and Recommendation (#46)

Magistrate Judge Stacy found that the underlying purpose of the prior case and this case, i.e., stopping the foreclosure, was the same, agreed that Plaintiffs repeatedly brought up the validity of

the assignment and or securitization of the Loan in the prior suit, and that several times they noted that the assignment took place well after the closing date of the PSA. Moreover the February 6, 2015 decision by the Texas Supreme Court constituted a final decision in the 2008 case. Finding that the undisputed summary judgment evidence demonstrates that the claims in the instant suit were or could have been brought in the prior suit, Magistrate Judge Stacy concluded that res judicata barred their assertion here and recommended that this suit be dismissed on res judicata grounds. Alternatively, she concluded that if the claims were not precluded by res judicata, Plaintiffs lack standing to challenge the assignment and/or securitization.  She further found that the evidence reflects an unbroken chain of title from the original lender, Wells Fargo Bank, N.A., to HSBC Bank USA, N.A., as Trustee for Wells Fargo Asset Securities Corporation Home Equity Asset-Backed Certificates, Series 2006-1. #40, Ex. C. She observed that the Murphys are not parties to the assignment or to the PSA, nor is there evidence they are third-party beneficiaries of either, so they do not have standing to challenge the assignments. Under *Reinagel*, Plaintiffs here lack standing to challenge the assignment and/or the securitization.  Since David Seybold, Vice President of Loan Documentation at Wells Fargo Bank, N.A. allegedly lacked the authority or capacity to execute an assignment or securitization of the loan, and Wells Fargo purportedly indulged in "robo-signing,

even if these allegations are true, at most they would render the assignment voidable and not void. *Id.*, 735 F.3d a 226 ("[Texas] law is settled that the obligors on a claim . . . may not defend [against an assignee's effort to enforce the obligation] on any ground which renders the assignment voidable only,' [and so defendant's] lack of authority, even if accepted as true, does not furnish the Reinagels with a basis to challenge the second assignment.").

Regarding Plaintiffs' motion to continue to conduct discovery to investigate how the note was transferred or not and whether they were third-party beneficiaries (#42), Magistrate Judge Stacy concurred with HSBC's argument that no amount of discovery can remedy Plaintiffs' lack of standing to assert such challenges under *Reinagel* and its progeny. Because they were not parties to the PSA, they lack standing to challenge their claim that the loan was assigned after the deadline provided by the PSA. *Sigaran v. U.S. Bank Nat'l Ass'n*, 560 Fed. Appx. 410, 413-14 (5th Cir. Apr. 30, 2014). Nor have Plaintiffs met the requirements for a continuance to conduct further discovery. She concluded, "By filing two lawsuits and delaying the foreclosure, Plaintiffs have managed to live for free in the Houston house for over seven years without making any mortgage payments on the non-recourse loan." She therefore recommends also denying Plaintiffs' motion to conduct discovery.

*Plaintiffs' Objections to the Memorandum and Recommendations (#48)*

First Plaintiffs insist that the Court must determine that HSBC is the owner and holder of the Note in order for it to get a judgment for foreclosure. They charge that in its motion for partial summary judgment HSBC relies on a 2008 assignment, made nearly two years after the formation of the trust for which HSBC acts as Trustee and which is contrary to the trust instrument and the representations made to the Internal Revenue Service, the Security and Exchange Commission, and the investors in the trust. Thus HSBC is either lying in its motion, or it lied to the public and these government agencies. Plaintiffs maintain that they need discovery to determine the truth.

Second Plaintiffs contend that they did not file any pleadings challenging HSBC's standing to sue because HSBC's standing was not at issue in its first suit because HSBC did not sue on the debt in dispute. Wells Fargo Bank, N.A., in its capacity as the servicer of the loan, filed a counterclaim for a declaration that the Murphys had not made mortgage payments and thus defaulted under the Note. #42, Ex. A. As the undisputed loan servicer, under Texas Civil Practices and Remedies Code § 51.0025, Wells Fargo had standing to bring the foreclosure action, whether or not it was the owner and holder of the Note. Since foreclosure or a money judgment for sums due was not in dispute, standing was not an essential element of the claim. Since HSBC did not join in the counterclaim for a

-30-

declaration that the Murphys had not made payments and that their failure to do so constituted default under the Note, its standing was not a necessary element of the counterclaim in issue.  Nor was it an issue in the breach of contract, fraud, and DTPA claims.

Furthermore, since the Murphys' standing claims here are in direct response to HSBC's claim that it has standing on its own to enforce and foreclose on the note, HSBC bears the burden of proving that standing.  HSBC claims that the Note and Security instrument attached to HSBC's motion were assigned to HSBC Bank USA as Trustee for the Wells Fargo Asset Securities Corporation Home Equity Asset-Backed Certificates, Series 2006-1, the assignment attached to the counterclaim is signed by the prosecuting Foreclosure Attorney who identifies himself as an officer of Wells Fargo Bank, N.A.  There is yet another version of the Note that was used in the previous state court cases and that has a rubber stamp signatory and is undated.  Plaintiffs contend that such contrary evidence "muddies the waters" about HSBC's compliance with the rules or controlling authority on negotiated instruments under the Uniform Commercial Code as adopted by Texas, where proof of delivery is mandatory to complete the transfer and to support standing.

Finally, citing the declaration from Patrick O'Brien Murphy, Ex. E to #42, Plaintiffs insist they are not asserting rights under the PSA.  They claim that the trust for which HSBC is Trustee was created on May 30, 2006, as evidenced by the SEC's records and by

the cover page of the PSA.   Under the trust, loans were to be assigned to the trust by the Closing Date of May 30, 2006.  Moreover the Internal Revenue Code of 1986, as amended, § 8600 *et seq.*, and Treasury Regulations 1.860 A-1 *et seq.* state that REMIC trusts, such as the one in dispute here, cannot take a troubled loan as an asset and that all assets must be placed in the trust within 90 days of its formation.   Because this loan was declared in default before June 2008, any assignment of the loan at that date is a violation of the terms of the PSA.

Plaintiffs represent that under the PSA, Wells Fargo Bank was the Originator of the Note; Wells Fargo Asset Securities Corporation was the Depositor; Wells Fargo N.A. was to assign the Note to Wells Fargo Asset Securities Corporation; and finally  Wells Fargo Asset Securities Corporation was then to assign the Note to the Wells Fargo Asset Securities Corporation Home Equity Asset-Backed Certificates, Series 2006-1 trust.   Plaintiffs highlight the fact that Wells Faro Bank made the assignment attached to HSBC's counterclaim long after the set deadlines.

### *HSBC's Response to Plaintiffs' Objections (#53)*

While Plaintiffs may not have directly asserted an explicit claim challenging HSBC's standing in the prior lawsuit, as Magistrate Judge Stacy pointed out, "In the course of the First Lawsuit the Murphys filed several Motions and Responses and challenged Wells Fargo's and HSBC's standing to foreclose . . . ."

As noted under applicable law, under the doctrine of res judicata, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were **or could have been** raised in that action. [emphasis added by this Court]'" *Falcon v. Holly*, ___ Fed. Appx. ___, 2016 WL 4427124 (5th Cir. Aug. 19, 2016), *quoting Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).  Because HSBC's standing to foreclose stems from the same nucleus of operative facts, Plaintiffs could have asserted a claim that HSBC lacked authority to foreclose.  Therefore Judge Stacy correctly found that Plaintiffs' challenge to HSBC's standing is barred by res judicata.  This Court agrees.

HSBC further contends that Magistrate Stacy correctly determined that alleged violations of the PSA are not actionable under the Fifth Circuit's holding in *Reinagel*, 722 F.3d at 706-07. Here, too, this Court concurs with HSBC.

HSBC also insists that Magistrate Stacy correctly determined that Plaintiff cannot challenge the assignment of Plaintiffs' mortgage based on a lack of authority in the signor. *Reinagel*, 735 F.3d at 226 ("[I]n *Nobles v. Marcus*, [533 S.W. 2d 923, 926 (Tex. 1976),] the Texas Supreme Court clarified that a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal . . . ."); *see also Brinson v. Universal Am. Mortgage Co.*, Civ. A.

-33-

No. G-13-463, 2014 WL 4354451, at *4 (S.D. Tex. Sept. 2, 2014)(Rosenthal, J.)(holding that the allegation that the assignment was signed by an employee of Bank America without authority to act for MERS would render assignment voidable, not void)(citing *Reinagel*, 735 F.3d at 334). This Court agrees with HSBC that Plaintiffs' objection should be overruled on this issue, too.

Regarding Plaintiffs' request for additional discovery, HSBC maintains that Plaintiffs provide no facts showing why they need additional discovery and how that additional discovery will create a genuine issue of material fact, because Plaintiffs lack standing to challenge the assignment of the mortgage as matter of law. Again the Court agrees with HSBC.

Accordingly, the Court overrules Plaintiffs objection (#48), adopts Magistrate Judge Stacy's memorandum and recommendation (#46) as its own, and grants HSBC's first motion for partial summary judgment (#40).

**HSBC's Second Motion for Partial Summary Judgment (#65)**

Plaintiffs argue that this action is time-barred under Texas Civil & Practices Code § 16.035 because HSBC did not foreclose on their property within four years of the first acceleration of their loan in June 2008. HSBC contends that this argument fails because HSBC abandoned its initial acceleration of the loan before the four-year statute of limitations expired and therefore Plaintiffs' claims fail as a matter of law.

-34-

The key facts here are that Plaintiffs executed the Note and the Deed of Trust to originate the mortgage on or around January 5, 2006.  The maturity date of the mortgage on their property at 503 Flaghoist Lane, Houston Texas 77079, was February 1, 2016. Currently HSBC holds the Mortgage (Assignment of Mortgage, Ex. G.), while Wells Fargo is the mortgage servicer for HSBC (Ex. A).

After Plaintiffs failed to cure their default, HSBC sent Plaintiffs a Notice of Acceleration on June 12, 2008 to consummate the 2008 Acceleration.  Exs. C & D.  The terms of the Mortgage provide that once acceleration takes place, the maturity date of the Mortgage was no longer February 1, 2016 (Ex. E) and all sums due and owing under the Mortgage were immediately due and payable (Exs. E & F).  Plaintiffs failed to cure their default after the 2008 Acceleration.  Instead, as noted *supra,* to stop the foreclosure they filed suit in the 55th Judicial District, where it remained pending from November 2008-June 2011.

On March 6, 2011, HSBC, by and through Wells Fargo, sent Plaintiffs the first Notice of Default and Intent to Accelerate (Ex. B), which clearly and unequivocally informed them that the 2008 Acceleration had been abandoned and the Mortgage was no longer accelerated:

> Our records indicate that your loan is in default for failure to make payments due. Unless the payments on your loan can be brought current by Apr. 5, 2011, it will become necessary to require immediate payment in full (also called acceleration) of your Mortgage Note and pursue the remedies provided for in your Mortgage of Deed

of Trust, which include foreclosure.
The Notice also instructed them clearly and unequivocally that they could "avoid the possibility of acceleration" by bringing the Mortgage current, but if they failed to do so, HSBC would "proceed with acceleration." *Id.* This First Notice of Default made clear that the 2008 acceleration had been abandoned and that the Mortgage was no longer accelerated.

Plaintiffs still failed to timely cure their default so HSBC re-accelerated the Mortgage on May 23, 2011, when HSBC sent Plaintiffs a new notice of acceleration (the "2011 Acceleration"), informing Plaintiffs that HSBC had "accelerated the maturity date of the Note and has declared all sums secured by the Deed of Trust to be immediately due and payable." Ex. I. Plaintiffs responded with a challenge to HSBC's standing to foreclose. June 13, 2011 Letter from Plaintiffs, Ex. J. The result was abandonment of the 2011 Acceleration while Wells Fargo endeavored to resolve the issue with Plaintiffs. Ex. A.

On December 30, 2011 HSBC sent a Second Notice of Default and Intent to Accelerate ("Second Notice of Default," Ex. C.), which, like the first, clearly informed Plaintiffs that the 2011 Acceleration had been abandoned: "If the default is not cured by such payment within thirty (30) days of the date of this notice, without further notice of demand, the maturity of the debt will be accelerated and all sums secured by the Deed of Trust will be

-36-

declared to be immediately due and payable." Ex. C.  The Second Notice of Default demanded less than the fully accelerated balance of the Mortgage and indicated that the 2011 Acceleration had been abandoned.  Ex. C.

In June 2012 HSBC re-accelerated the Mortgage when its foreclosure attorney sent Plaintiffs another Notice of Acceleration (Ex. L, June 20, 1012 Notice of Acceleration).  On August 16, 2012 HSBC filed a second application for expedited non-judicial foreclosure, pursuant to Texas Rule of Civil Procedure 736.  Ex. M. Once again, Plaintiffs filed suit to stop the foreclosure in the 151st Judicial District of Harris County, Texas.  #1-B.2 (the "2012 Lawsuit").  HSBC removed that action to this Court on November 5, 2012.

HSBC maintains that under Texas law, abandonment of a mortgage loan can be effected unilaterally by conduct or by joint agreement and/or conduct of the parties.  *Clawson v. GMAC Mortg., LLC*, Civ. A. No. 3:12-CV-00212, 2013 WL 1948128, at *3-4 (S.D. Tex. May 9, 2013), *citing San Antonio Real-Estate, Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386, 388 (Tex. 1901).  Moreover conduct alone is sufficient to abandon acceleration, and "a lender can unilaterally abandon an acceleration." *Leonard v. Ocwen Loan Servicing, LLC*, 616 Fed. Appx. 677, 679-80 (5th Cir. June 9, 2015)(*citing Holy Cross*, 44 S.W. 3d 562), *cert. denied*, 136 S. Ct. 554 (2015).  A "lender abandons acceleration when it 'put[s] the debtor on notice of its

abandonment . . . by requesting payment on less than the full amount
of the loan." *Boren*, 807 F.3d at 106.  Not only may accepting a
payment after acceleration amount to abandonment or waiver of the
acceleration, but representing to the mortgagor that payment of less
than the entire obligation will bring the loan current may also
constitute abandonment or waiver of the acceleration as a
manifestation of "actual intent to relinquish it." *Martin v.
Federal National Mortg. Ass'n*, 814 F.3d 315, 318-19 (5th Cir. 2016),
*citing Rivera v. Bank of America, N.A.*, 607 Fed Appx. 358, 361 (5th
Cir. 2015), and *Boren*, 807 F.3d at 105.  After a note holder
abandons acceleration, it is no longer required to foreclose within
four years from the date of acceleration.  *Leonard v. Ocwen Loan
Servicing, LLC*, CIV. A. H-13-3019, 2014 WL 4161769, at *4 (S.D. Tex.
Aug. 19, 2014), *aff'd*, 616 Fed. Appx. 677 (5th Cir. June 9, 2015,
*cert. denied*, 136 S. Ct. 554 (2015).  If the mortgage servicer
demands less than the full balance of the mortgage after
acceleration has occurred, there are no genuine issues of material
fact for trial.  *Id.*  HSBC argues that here it or its mortgage
servicer, Wells Fargo Bank, N.A., demanded less than the fully
matured and accelerated balance on the mortgage more than once after
the 2008 Acceleration and therefore the 2008 acceleration was
abandoned.  Affidavit of Jessica Suzanne Phillips, #65, Ex. A; March
2011 Notice of Default, Ex. B; December 2011 Notice of Default, Ex.
C; Affidavit of Elizabeth Hayes, Ex. D.  Plaintiffs' assertion that

HSBC is barred from foreclosing by the applicable statute of limitations fails as a matter of law. *Cline v. Deutsche Bank Nat. Trust Co.*, Civ. A. No. 3:24-CV-1565-D, 2015 WL 4041791, at *5 (N.D. Tex. July 2, 2015)("Abandoning acceleration before the limitations period expires restores the contract to its original condition, including the note's original maturity date. Thus if a noteholder abandons acceleration, it no longer must foreclose within four years from the date of acceleration."[citations omitted]).

The Fifth Circuit has recently recognized a number of ways a that a lender or loan servicer can abandon acceleration. *See e.g., Leonard*, 616 Fed. Appx. at 680 (Ocwen's unilateral actions in sending the Leonards account statements were sufficient to constitute abandonment of the 2009 Notice of acceleration); *Boren*, 807 F.3d at 106 (sending correspondence in which the lender demands less than the fully accelerated balance of the loan proves that a previous acceleration was abandoned as a matter of law and "provided the Borens with an opportunity to avoid foreclosure if they cured their arrearage. As a result the statute of limitations period under § 16.035(a) ceased to run at that point and a new limitations period did not begin to accrue until the Borens defaulted again and U.S. Bank exercised its right to accelerate thereafter.").

In the instant case the summary judgment evidence conclusively demonstrates that the 2008 Acceleration was abandoned. Both the First and Second Notices of Default demanded that Plaintiffs pay

less than the fully accelerated balance of the Mortgage before the limitations period expired.  Exs. B and C.  Thus there is no genuine issue of material fact that the 2008 Acceleration of the Loan was abandoned because HSBC "communicated explicitly . . . the intent to seek less than the accelerated amount of the full default." *Leonard v. Ocwen Loan Servicing, LLC*, Civ. A. No. H-13-3019, 2014 WL 4161769, at *5 (S.D. Tex. Aug. 19, 2014), *aff'd*, 616 Fed. Appx. 677 (5th Cir. June 9, 2015), *cert. denied*, 136 S. Ct. Nov. 30, 2015).

In addition, HSBC contends that Plaintiffs' declaratory judgment claim must be dismissed because Plaintiffs' allegation that HSBC's lien is unenforceable fails as a matter of law.  In *Kazmi v. BAC Home Loans Servicing, LP*, No. 4:11-CV-375, 2012 WL 629440, at *15 (E.D. Tex. Feb. 3, 2012)(citations omitted), the district court explained, "The Declaratory Judgment Act is a procedural device that creates no substantive rights and requires the existence of a justiciable controversy.  Thus the Act provides no relief unless there is a justiciable controversy between the parties."  The *Kazmi* court went on to quote the Fifth Circuit in *Bauer v. Texas*, 341 F.3d 352, 258 (5th Cir. 2003):

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, the plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.  Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties.  The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.  Additionally, the continuing

> controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.

*In accord, Defranchesi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 626-27 (N.D. Tex. 2011); *Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-71 (5th Cir. 1990); *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 Fed. Appx. 398, 400-01 (5th Cir. Apr. 7, 2011).

Finally, HSBC urges that Plaintiffs' claim for suit to quiet title should also be dismissed as a matter of law.  A suit to quiet title permits a plaintiff to remove "any unlawful hindrance" on title to property that erroneously appears to be superior to the plaintiff's interest in the property.  *Hahn v. Love*, 321 S.W. 3d 517, 531 (Tex. App.-Houston [1st Dist.] 2009, pet. denied).  As noted *supra*, "the plaintiff must recover on the strength of his or her title, not the weakness of his adversary's."  *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *5 (W.D. Tex. July 25, 2011).  Plaintiffs base their suit on claims that HSBC is barred from foreclosing on the Property by the applicable statute of limitations and that its lien is therefore unenforceable.  They do not base their suit on the strength of their own title, but on the alleged weakness of HSBC's lien.  Thus it fails as a matter of law.  *Id.*  Furthermore, the summary judgment evidence shows that their claim fails as a matter of law because the 2008 Acceleration was abandoned by the parties' conduct.

-41-

**Magistrate Judge's Memorandum and Recommendation (#81)**

Magistrate Judge Stacy concluded that Fifth Circuit law supports HSBC's argument that its acceleration of the Note was abandoned with the result that the accrual date for purposes of § 16.035's four-year statute of limitations was reset.  The March 6, 2011 Notice of Default, sent by HSBC to the Murphys before the expiration of the four-year statute of limitations, constituted an abandonment of the 2008 acceleration because the terms of that Notice were inconsistent with the prior 2008 acceleration and allowed the Murphys to bring the loan current by paying an amount substantially less than the full balance of the Note.  As such the March 6, 2011 Notice of Default operated both as an abandonment of the earlier acceleration, and it reset the four-year limitations period under § 16.035 of the Texas Civ. Prac. & Rem. Code, which would not begin until Plaintiffs again defaulted and HSBC exercised its right to accelerate.  *Boren*, 807 F.3d at 106.[8]  Magistrate Judge Stacy therefore recommended that the Court grant HSBC's second

---

[8] In *Boren*, 807 F.3d at 106, the Fifth Circuit found that the second notice of default, stating that the borrowers could bring their debt current by submitting the amount of their past due monthly payments, instead of the full balance of the loan, and that the bank would accelerate the loan if they did not cure the arrearage in forty-five days, constituted abandonment of the first notice of acceleration because it "unequivocally manifested an intent to abandon the previous acceleration."

In *Leonard*, 616 Fed. Appx. at 679, the Fifth Circuit found that the loan servicer also sent a letter to the borrowers stating that they could avoid acceleration of the maturity of the debt by paying past due amounts, which amounted to less than the total amount due on the loan.

motion for partial summary judgement in HSBC's favor on all of the
limitations-based claims.

### Plaintiffs' Objections (#83)

Plaintiffs observe that the Magistrate Judge relied mainly on
Fifth Circuit decisions in *Boren*, 807 F.3d 99, and *Leonard*, 616 Fed.
Appx. 677, holding that a new intent to accelerate letter that
offers the borrower an opportunity to cure the default by paying
less that the accelerated amount constitutes an abandonment of the
earlier acceleration and resets the accrual of the foreclosure cause
of action to the date of the new letter.[9]  Plaintiffs argue that the

---

[9] The Court refers the parties also to *Rivera v. Bank of
America, N.A.*, 607 Fed Appx. 358 (5th Cir. 2015)(addressing the
same issues), in which after the Riveras defaulted on their loan
payment in 2004, the mortgagee Bank of America exercised its
right of acceleration and gave notice of foreclosure.  The
Riveras filed for Chapter 13 bankruptcy in May 2004, and after
that was dismissed, filed again in May 2005, which closed in July
2005.  In 2006 the Riveras made several payments on the note that
were accepted by the lender and applied to the balance.  In 2010
Bank of America sent the Riveras a notice of default and intent
to accelerate the entire balance of the loan.  In 2010 Bank of
America also sent the Riveras a loan modification under the
federal Making Homes Affordable program, which they filled in and
submitted, but which somehow got lost.  In February 2013 the Bank
of America notified the Riveras that their property would be
posted for foreclosure sale on March 5, 2013.  The Riveras filed
suit in state court seeking a declaratory judgment barring the
bank for foreclosing on the grounds that the statute of
limitations had run.  The case was removed to federal court,
where the district court judge adopted the magistrate judge's
recommendation and granted summary judgment to the bank.  The
Riveras appealed.
     The Fifth Circuit held that Bank America abandoned its 2004
acceleration of the note by accepting continued payments in 2006,
as the uncontroverted summary judgment evidence showed.  Their
cause of action did not accrue until Bank of America again

-43-

*Boren* panel made the "wrong" *Erie* guess about what the Texas Supreme Court would decide and that the borrower in *Boren* did not direct the panel's attention to *Holy Cross*, 44 S.W. 3d 562, the seminal case which considered the issue and which, Plaintiffs argue, rejected it. Moreover the Fifth Circuit panel in *Leonard* found that the Leonards did not provide authority for the proposition that an offer to take less than the accelerated amount was not abandonment and therefore followed the reasoning of *Boren*. They insist that Texas case law both before and after *Boren* and *Leonard* provides no authority that a lender's offer to take less than the accelerated amount, without a clear and unequivocal statement that a waiver of the right to accelerate is made by the lender.

Plaintiffs contend that Texas intermediate appellate courts have held that the non-waiver provision of the loan documents permitted the lender to take less than the full amount after acceleration without affecting its right to rely on its previous acceleration to foreclose. In other words these courts have held that an offer to take less than a full amount was not an abandonment of acceleration; one Fifth Circuit panel has adopted this reasoning.

Plaintiffs assert that in *Holy Cross*, in which there was evidence not only of a second acceleration, but multiple notices of

_____

invoked the acceleration clause in 2010. Thus Bank of America's foreclosure suit in 2013 was within the four-year limitations period.

default, the Texas Supreme Court found that the first acceleration letter triggered acceleration and by it, the accrual date for the statute of limitations.  Even though the lender offered to negotiate and accept payments of less than the full amount, the Texas Supreme Court did not even consider abandonment.[10]  Ex. A, Exs. 13 and 14, copies of post acceleration letters from lender through its counsel. *See also Merchant v. PHH Mortgage Corp.*, Cause No. 12-12-00261-CV, 2013 WL 5593493 (Tex. App.--Tyler 2013, no pet.)[11]; *Koehler v.*

---

[10] The Court disagrees with Plaintiffs' view of this case. The Fifth Circuit did address the abandonment issue in *Holy Cross*, opining that a holder can by its actions, such as continuing to accept installments, abandon the acceleration, but nevertheless found that "abandonment is not implicated in this case" because "'it is undisputed that the Church did not pay the balance or any portion [of the note], or resume making regular payments or in any way change its position.'" 44 S.W. 3d at 566, 570.  Nevertheless the court did hold that accrual is a legal question, and whether a holder has accelerated a note is a fact question; but it also held that parties may agree on the acceleration issue, as they did in that case where the defendant's response to Holy Cross's motion for summary judgment and his own counter-motion for summary judgment judicially admitted that the note was accelerated on August 15, 1994.  *Id.* at 568.

[11] In *Merchant*, after PHH Mortgage Corporation sent Merchant a letter specifying that he was in default and that he had to cure that default by a certain date, then a notice of default, followed by a notice of acceleration with notice of the trustee's sale, PHH's counsel sent Merchant two letters, which provided, pursuant to Merchant's request, the reinstatement figures for the loan through the end of the month in which the letter was sent and an explanation that the amount due changes daily and instructions for him to call for the exact amount due.  Each letter also stated that "[o]nce funds are received, the foreclosure action will be discontinued upon verification with the mortgage company that the funds are sufficient to reinstate your account."  Merchant argued that these letters contradicted the assertion that his loan had been accelerated and raised a

*Pioneer Am. Ins. Co.*, 425 S.W. 2d 889, 892 (Tex. Civ. App.--Ft. Worth 1968, no writ)[12]; *Residential Credit Solutions, Inc. v. Burg*, No. 01-15-00067-CV, 2016 WL 3162205 (Tex. App.--Houston [1st Dist.] June 2, 2016)[13]; *Khan v. GPAK Properties, Inc.*, 371 S.W. 3d 347, 356

---

fact issue as to whether PHH waived its right to accelerate and foreclose. The court disagreed, finding that the letters offered Merchant the opportunity to have the foreclosure process stopped, but did not abrogate the effectiveness of the earlier notices and did not raise a fact question about waiver of the right to accelerate and foreclose. It also concluded that there is no requirement in the statute that the three consecutive weeks' notice be immediately prior to the sale.

[12] In *Koehler* the plaintiff "suggested to the trustees to whom defendant had conveyed the property that defendant execute a quitclaim deed to the property and thus avoid a deficiency judgment. Defendant admits he took the matter under consideration, but never made a decision known to the trustees or to the plaintiff." The court concluded, "The parties may agree, as defendant did in this case, that the recitals in the conveyance to the purchaser at any trustee's sale shall be full evidence of the truth of the matters stated therein, and all prerequisites to said sale shall be conclusively presumed to have been performed." 425 S.W. 2d at 892.
  Plaintiffs argue that *Merchant* and *Koehler* support the argument that without something more, new letters offering to accept less that the full amount after accelerations are not evidence of waiver of the right to foreclose. Therefore under Texas law the second set of letters are not evidence of abandonment.

[13] The court in *Residential*, citing to *Holy Cross* and *Khan*, noted the established rule that acceleration can be abandoned by agreement or other action of the parties, such as when the holder continues to accept payments without exacting any remedies available to it upon declared maturity, and that abandonment is generally a question of fact, while accrual is a matter of law. 2016 WL 3162205, at *3. In *Residential* the court found that two identical stipulation agreements, each party signing one, did not constitute evidence of abandonment because each expressly stated that the mortgage servicer is entitled "to take any action necessary to maintain the *pending foreclosure action*" and that they "unambiguously reflect that [the mortgage servicer] will

(Tex. App.-Houston [1ˢᵗ Dist.] 2012, no pet.)[14]; *Hardy v. Wells Fargo Bank, N.A.*, No. 01-12-00945-CV, 2014 WL 7473762 (Tex. App.--Houston [1ˢᵗ Dist.] no pet.)(acceptance of a single payment by Wells Fargo did not show abandonment of acceleration and the note remained due and owing, but the payments were made pursuant to a binding repayment agreement that stated that partial payments would not abandon acceleration and the lender expressly conditioned its acceptance of payments on the continuation of a prior acceleration).

Plaintiffs insist that under Texas law, HSBC's offer to take less than the full amount is a unilateral contract, an illusory promise that has no effect until the offerees, i.e., the Murphys, act on the offer and pay the money. *City of Houston v. Williams*, 353 S.W. 3d 128, 135 (Tex. 2011). Since the Murphies did not so act, there was no contract, the rights of the parties remain the same; moreover the letter did not mention the prior acceleration or its rights under the controlling loan documents.

Furthermore here there was no explicit modification agreement between the parties. HSBC presented only new letters of an intent to accelerate and a right to cure and a new acceleration letter

_____

abandon acceleration *only if* [the debtor] makes all of the required payments under that agreement and brings the Note current. [The debtor] never made a payment under either Stipulation agreement." *Id.* at *1 and 4. Thus the original acceleration was not affected.

[14] The court in *Khan* also concluded that whether a party has abandoned acceleration of a note is a fact question. 371 S.W. 3d at 356.

(#83, Ex. B), which, at most, offer to forbear foreclosure if the Murphys cured their defaults, as permitted by the Security Instrument (#65-6, Ex. F, ¶ 11), between the Murphys and the lender to forbear enforcement without waiving any remedies.  The letters produced by the two parties consistently reserved the lender's right to proceed with foreclosure unless the Murphys cured the default (#83, Ex. B):  "**However, any future negotiations attempting to reinstate your loan or any payment of less than the amount due shall not require Wells Fargo Bank, N.A.'s waiver of the acceleration unless otherwise agreed to, in writing, by Wells Farge Bank, N.A.**"

*See also* ¶ 21 of the Security Instrument (#65-6, Ex. F)("Acceleration; Remedies), which include the statement, "The notices shall further inform Borrower of the right to reinstate after acceleration . . . ."  Thus new letters of intent to accelerate and notice of acceleration do not undo the prior 2009 acceleration, or offer any more than the right the Murphys had under the original documents; an offer to accept less than the full payment beyond acceleration does not abandon acceleration or the pending foreclosure process.  HSBC required the Murphys to agree by the terms of ¶¶ 11 and 12 in the Security Instrument that any accommodation offered to them could not be used against HSBC and considered a waiver.  The Bank would have to show with more than a simple offer of accommodation, i.e., evidence that it was intentionally and specifically waiving the quoted language.  HSBC

has not shown that it waived these rights to proceed with the remedies it had already declared, so its limitations argument must fail.  Any waiver of those rights would have to establish all elements of waiver:  "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Thompson v. Bank of America Nat'l Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015), *quoting Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W. 3d 773, 778 (Tex. 2008).  "Where waiver is claimed by inference rather than express renunciation, 'it is the burden of the party who is to benefit . . . to produce conclusive evidence that the opposite party unequivocally manifested its intent to no longer assert its claim,'" *Id.* (citation omitted).  The homeowner must provide conclusive evidence of the bank's intent to relinquish its right to foreclose; evidence that the bank accepted and considered a modification agreement is not an abandonment of the right to foreclose without an explicit statement or evidence that the bank intended to waive its right.  The bank should be held to the same burden of proof as the borrower in *Thompson* when it seeks to avoid limitations by claiming abandonment.  Instead HSBC relies only on the fact that it made an offer to accept less than the accelerated balance to have his Court infer abandonment.  There is no evidence that HSBC unequivocally revoked its 2008 intent to foreclose.

-49-

Plaintiffs also quote in their entirety § 16.035 ("Lien on Real Property"), § 16.036 ("Extension of Real Property Lien"), and § 16.038 ("Rescission or Waiver of Accelerated Maturity Date") of the Texas Civil Practice & Remedies Code, to argue that under all, read together, the lender has to take affirmative and open acts, such as the lender accepting payments without exacting its right to foreclose, to infer or to make an abandonment. *Khan*, 371 S.W. 3d 347. These statutes make clear that HSBC could unilaterally revoke, but had to do so unequivocally; it cannot do so by inferring intent from language where no such intent is explicitly stated.

Moreover, Magistrate Judge Stacy's Memorandum and Recommendation (#81, p.6 n.1.) stated that limitations were tolled by Plaintiffs' first lawsuit, a theory not raised by HSBC and one rejected by this Court when it vacated its first order in its Opinion and Order of March 25, 2015 (#38). Plaintiffs argue that in *Landers v. Nationstar Mortgage, LLC*, 461 S.W. 3d 923 (Tex. App.-Tyler 2015, pet. denied), the borrowers (the Landers) defaulted on their loan and the lender accelerated the debt on November 9, 2009. The Landers then sued the lender for fraud and estoppel and moved for and were granted a temporary injunction restraining the lender from conducting a foreclosure sale of the property in dispute. Ultimately the court granted summary judgment that the Landers take nothing and the injunction expired by its terms. The lender then filed suit to judicially foreclose on the property and claimed the

prior suit tolled limitations during the time it was pending.  The Court disagreed and held that the non-judicial foreclosure and the judicial foreclosure were distinct procedures and an injunction barring one was not effective to bar the other.  The lender could have filed a suit for judicial foreclosure of the lien and thus was not forced to take inconsistent positions in the litigation.  Here HSBC or servicer Wells Fargo could have counterclaimed for foreclosure in the prior case.  Since limitations was not tolled, its 736 action filed in 2012 was time-barred.

*Defendant's Response (#84) to Plaintiffs' Objections*

Observing that Plaintiffs continue to argue that HSBC is barred by limitations from foreclosing on their property despite controlling authority to the contrary, HSBC maintains that Magistrate Judge Stacy correctly concluded that the 2008 acceleration was abandoned.  It is undisputed that (1) on March 6, 2011 HSBC, by and through Wells Fargo, sent Plaintiffs a Notice of Default and Intent to Accelerate (the "First Notice of Default"); (2) that on December 30, 2011 HSBC sent Plaintiffs a second notice of Default and Intent to Accelerate ("Second Notice of Default"); and (3) Both First and Second Notices of Default clearly stated that the Mortgage was no longer accelerated, gave notice to Plaintiffs that the 2008 Acceleration had been abandoned, and demanded that Plaintiffs cure their default or the mortgage again would be accelerated.  Despite Plaintiffs' claims of ignorance, which are

legally irrelevant, the Fifth Circuit has held that a "lender waives its earlier acceleration when it 'put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan.'" *Boren*, 807 F.3d at 106, *quoting Leonard*, 616 Fed. Appx. at 680; *see also Alvarado v. U.S. Bank Nat'l Ass'n*. 15-51017, 2016 WL 3402587, at *2 (5th Cir. June 20, 2016). The Notices of Default "unequivocally manifested an intent to abandon the previous acceleration and provided [Plaintiffs] with an opportunity to avoid foreclosure if they cured their arrearage." *Id.* Thus the 2008 acceleration of the Mortgage was abandoned as a matter of law, and Plaintiffs' Objections should be overruled.

Next, HSBC contends that Plaintiffs misconstrue the Deed of Trust and erroneously rely on one of its provisions to argue that it creates a genuine issue of material fact about whether the 2008 Acceleration in this case was abandoned: that forbearance by Plaintiffs' lender from exercising its rights and remedies under the Mortgage "including, without limitations, Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy." #65-6, Ex. F, ¶ 11. HSBC asserts that courts in Texas have examined this very language and concluded that it does not prevent lenders from abandoning acceleration. *See, e.g., Wells v. Bank of Am., N.A.*, 3:13-CV-3658-M, 2015 WL 4269089, at *6 (N.D. Tex. July 14,

-52-

2015)("The deed of trust does not preclude Defendant from abandoning an acceleration of the loan.  It simply provides Defendant with a reservation of rights if it chooses to refrain from exercising a right or remedy under the deed of trust.  Abandonment of acceleration and waiver of acceleration are different issues."); *Berry v. Fed. Nat'l Mortgage Ass'n & Seterus, Inc.*, 3:15-CV-3279-G (BN), 2015 WL 9598894, at *8 (N.D. Tex. Dec. 14, 2015)("The Deed of Trust, by its terms, does not prohibit Defendants from extending appeal briefing deadlines or agreeing with Plaintiffs to extend the time in which Defendants can exercise their rights and remedies to foreclose."), *report and recommendation adopted sub nom. Berry v. Fed. Nat'l Mortgage Ass'n*, 2016 WL 54334 (N.D. Tex. Jan 4, 2016); *Mendoza v. Wells Fargo Bank, N.A.*, Civ. A. H-14-554, 2015 WL 338909, at *4-5 (S.D. Tex. Jan 23, 2015)("Abandonment of a prior acceleration and waiver of future acceleration are separate issues. . . . Plaintiffs point to no authority, and the court is aware of none, construing an anti-waiver provision in a deed of trust as barring abandonment of acceleration.  Furthermore, construing the anti-waiver provision as Plaintiffs suggest would only harm borrowers.  As Wells Fargo argues, anti-waiver provisions 'encourage forbearance by allowing lenders to delay exercising remedies, such as foreclosure, without the risk of losing contractual rights,' but 'applying [such a provision] to prevent abandonment of acceleration would have the opposite and perverse effect of discouraging

forbearance.").

Plaintiffs also argue that the Notices of Default did not abandon the 2008 Acceleration because the Deed of Trust gives them the right to reinstate their mortgage after acceleration.  Ex. F at ¶ 21.  They claim that the Notices of Default did not "offer any more than the right the Murphys had under the original loan documents."  Defendant responds that Plaintiffs' argument lacks merit, maintaining that the Notices of Default clearly communicated that the Mortgage was not accelerated, demanded less than the fully accelerated balance of the Mortgage, and advised that the Mortgage would again be accelerated if the default is not cured.  The continued right to avoid foreclosure by reinstating their default does not alter the fact that HSBC treated the Mortgage as if it was not accelerated and communicated that it was not accelerated to Plaintiffs.

HSBC further contends that Section 16.038(e), the "Rescission Statute," simply offers one method, not an exclusive one, for a lender to abandon or waive the acceleration of a mortgage by written notice, but does not affect Wells Fargo's ability to abandon the 2008 Acceleration.  *Boren*, 807 F.3d at 106 (the Rescission Statute provides "a specific mechanism by which a lender can waive its earlier acceleration: and should simply be "construed as a 'best practice' for a lender to effectuate its abandonment.").  It "does not prohibit the earlier methods by which a lender may abandon or

waive its acceleration of the debt," e.g., Tex. Civ. Prac. & Rem. Code § 16.038.[15]  *Id.; see also Nunnery v. Ocwen Loan Servicing, LLC,* 641 Fed. Appx. 430, 433 & n.3 (5th Cir. Mar. 11, 2016)(Compliance with "§ 16.038, which sets out a procedure for rescinding the acceleration of a note[,] . . . is irrelevant . . . because '[t]he statute does not . . . create an exclusive method for abandoning or waiving acceleration.'")(*citing Boren,* 807 F.3d at 106).  Thus Plaintiffs' contention that the Rescission Statute should be construed to require an explicit rescission of the 2008 Acceleration by HSBC fails as a matter of law.

Finally HSBC asserts that Judge Stacy correctly observed that even if the 2008 Acceleration were not abandoned, HSBC is not precluded from foreclosing on the Property because the limitations period was tolled while Plaintiffs' first lawsuit was pending. #81, p.6 n.1.("[T]he Murphys['] first state court lawsuit, which effectively prevented Defendant from seeking an expedited foreclosure under Rule 736 of the Texas Rule of Civil Procedure,

---

[15] Section 16.038(b)-(c) "provides that waiver of acceleration will be effective if the lender serves written notice of its waiver by first class or certified mail." *Boren*, 807 F.3d at 106.  Section 16.038(d) states that "'[a] notice served under this section does not affect a lienholder's right to accelerate the maturity date of the debt in the future nor does it waive past defaults.'"  *Id.*  Last, § 16.038 states, "This section does not create an exclusive method for waiver and rescission of acceleration or affect the accrual of a cause of action and the running of the related limitations under Section 16.035(e) on any subsequent maturity date, accelerated or otherwise, of the note or obligation or series of notes or obligations."  *Id.*

operated to toll the limitations period. *See, e.g., Curry [v. Ocwen Loan Servicing LLC*, Civ. A. No. H-15-3089, 2016 WL 3920375, at *6 (S.D. Tex. July 14, 2016)(because '[a] Rule 736 proceeding cannot be brought as a counterclaim in a borrower's suit against the lender. . . . Defendants were prevented from obtaining the constitutionally required court order they need to exercise their contractually granted power of sale; and therefore 'the statute of limitations for exercising such was thus tolled' during the pendency of the borrower's action)." That suit to stop foreclosure was filed on November 13, 2008, stayed in the trial court until March 29, 2011, was appealed to the appellate court and then to the Texas Supreme Court, which ultimately dismissed Plaintiffs' claims on February 6, 2015. During that period, limitations was tolled on HSBC's foreclosure cause of action even if the 2008 Acceleration had not been abandoned.

### Court's Decision

The Court concludes that the issues here are a matter of law. Furthermore, after a careful *de novo* review, the Court concurs with HSBC and United States Magistrate Judge, who has correctly cited and applied the law to the facts here that are supported by the documentary summary judgment evidence.

Furthermore, regardless of whether Plaintiffs agree with the decisions of the intermediate appellate courts they cite over the Fifth Circuit's decisions, this Court is bound by the Fifth

Circuit's decisions in *Bowen,* and *Leonard.*   Moreover the Fifth Circuit recently reiterated its rulings in *Boren* and *Leonard* in *Martin v. Federal Nat. Mortg. Ass'n*, 814 F.3d 315 , 317–18 (5th Cir. 2016).   Because there is no case and controversy, Plaintiffs' request for a declaratory judgment is denied.   Moreover their suit to quiet title is also denied for reasons cited in this Opinion and Order.

Accordingly, for the reasons stated above, the Court ORDERS the following:

(1)  HSBC's motion to strike (#74) is MOOT;

(2)  the Court OVERRULES Plaintiffs objection (#48), ADOPTS Magistrate Judge Stacy's memorandum and recommendation (#46) as its own, and GRANTS HSBC's motion for partial summary judgment (#40);

(3)  Plaintiffs' related motion to continue to conduct discovery (#42) is DENIED;

(4)  HSBC's second motion for partial summary judgment (#65) is GRANTED; and

(5)  Plaintiffs' requests for a declaratory judgment and to quiet title are DENIED.

Defendant's Counterclaims remain pending.

**SIGNED** at Houston, Texas, this <u> 30th </u> day of <u> January </u>, 2017.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE